IN RE: ELIZABETH V. HUSKINS, Individually and as Executrix of the ESTATE OF DAVID H. HUSKINS, Plaintiff v. SCOTT E. HUSKINS; JAMES C. HUSKINS; LISA H. MOORE; CYNTHIA H. SITTON; JONATHAN HUSKINS, a minor by and through his guardian ad litem, DAVID P. HUSKINS; JOE D. HUSKINS, Defendants

No. COA98-1147

(Filed 6 July 1999)

## 1. Gifts— contents of safe—combination mailed to son—no gift to wife

The trial court erred by granting summary judgment for plaintiff-wife in an action to determine whether certain monies represented completed gifts where defendants argued that decedent's mailing of the combination of a safe to his son before committing suicide was not a gift of the contents of the safe to his wife. Although there was a notation that the contents of the safe belonged to Mrs. Huskins, there is a serious question about whether mailing the combination to the son was a constructive delivery of the contents to the wife.

## 2. Gifts— check—not paid before death—not a gift

The trial court erred by deciding that a check mailed to decedent's son made payable to decedent's wife constituted a completed gift to the wife where the bank had not paid the check

when the donor died. Decedent's death revoked the relationship with the bank and precluded the bank from honoring the check; the check is a part of the decedent's probate estate.

### 3. Wills— cash on decedent's person—personal effect

The trial court properly found that cash found on decedent's body is a personal effect and would pass under a personal effects clause rather than under a residuary clause. It would not be prudent to formulate a bright line rule that large amounts of cash are not personal effects as a matter of law. The courts must continue to ascertain the intention of each testator afresh in each case, analyzing the wording of each will as it relates to the circumstances of each individual testator.

Appeal by defendants Scott E. Huskins, James C. Huskins, Lisa H. Moore, Cynthia H. Sitton, and Jonathan Huskins, a minor by and through his guardian ad litem, David P. Huskins from judgment entered 17 June 1998 by Judge Zoro J. Guice, Jr., in McDowell County Superior Court. Heard in the Court of Appeals 28 April 1999.

On or about 8 September 1996, David H. Huskins (decedent) mailed an envelope to his son Scott E. Huskins (Scott) containing a check payable to decedent's wife, Elizabeth V. Huskins (Mrs. Huskins), in the amount of $220,000.00. The envelope also contained a handwritten note which gave the combination to a safe in decedent's apartment with the statement, "the contents belong to your mother" underneath the combination. In addition, a separate entry on the note stated "cash the check before my will is probated."

Later on the day of 8 September 1996, decedent committed suicide. The police officer who arrived on the scene found a white envelope on decedent's person which contained the amount of $8,720.00 in cash. An additional $1,330.25 was in decedent's wallet which was in his pocket. On 10 September 1996, Scott met with Peggy Neighbors (Ms. Neighbors), a twenty-year employee of decedent, who gave Scott the combinations to decedent's safe which was located in the apartment in which decedent and Mrs. Huskins lived. Ms. Neighbors told Scott that decedent had given her the combination to the safe about a year before he died and instructed her to give the combination only to Scott and no one else. Mrs. Huskins was never given the combination to the safe before decedent died even though the safe was in the residence that she shared with decedent.

On 12 September 1996, Mrs. Huskins and four of decedent's five children, Scott, Cynthia Sitton (Cynthia), Lisa Moore (Lisa), and David P. Huskins (David), opened the safe with the combination provided by Ms. Neighbors. The upper vault of the safe contained approximately $220,000.00 in cash. On 13 September 1996, Scott returned to his home in Georgia and received the envelope mailed by decedent containing the check payable to Mrs. Huskins and the combination to the safe.

The decedent died testate. His will provided in part:

I bequeath to my wife, ELIZABETH VANCE HUSKINS, if she shall survive me, all household furniture and furnishings which I may own at the time of my death, all of my personal effects and any automobiles which I may own at the time of my death.

The will also provided for the establishment of two trusts: the Elizabeth V. Huskins Trust (a marital trust), and the David H. Huskins family trust. Mrs. Huskins is the sole beneficiary of the marital trust and is a beneficiary of the income from the family trust. Scott, Lisa, Cynthia, David, Jonathan Huskins and James Huskins (collectively, defendants) may also benefit from the family trust income in the trustee's discretion.

An amount in excess of $400,000.00, which includes the proceeds from decedent's check made payable to Mrs. Huskins, the cash found in the safe, plus earned interest, was placed in an escrow account. Mrs. Huskins and the five children signed an agreement on 6 April 1997 which stated that the "approximately four hundred nineteen thousand dollars currently being held in escrow by Dameron and Burgin Law firm on behalf of the Estate of David H. Huskins be provided to establish the marital trust specified in the last will and testament of David H. Huskins." Mrs. Huskins then filed this complaint in July 1997 to determine whether any of the money in the escrow account represented completed gifts to her so that they would not be subject to the testamentary trusts established in decedent's will. Both Mrs. Huskins and defendants filed motions for summary judgment. The trial court granted Mrs. Huskins' motion for summary judgment and denied defendants' motion. Defendants appealed, assigning errors.

**HUSKINS v. HUSKINS**

[134 N.C. App. 101 (1999)]

*Carnes and Franklin, P.A., by Hugh J. Franklin, for plaintiff appellee Elizabeth V. Huskins.*

*Adams Hendon Carson Crow & Saenger, P.A., by Philip G. Carson and Joy Gragg, for defendant appellants Scott E. Huskins, James C. Huskins, Lisa H. Moore, Cynthia H. Sitton; and Jonathan Huskins, by David P. Huskins, guardian ad litem.*

HORTON, Judge.

The issues in this case are whether: (I) mailing the combination to the safe constituted a completed gift of the contents of the safe to Mrs. Huskins; (II) the check mailed to Scott was a completed gift to Mrs. Huskins; and (III) the cash found on decedent's body was a "personal effect" and passed to Mrs. Huskins under decedent's will.

I

[1] Defendants argue that decedent's act of mailing the combination to the safe was not a gift of the contents of the safe to Mrs. Huskins because the cash in the safe was never actually or constructively delivered to Mrs. Huskins; the letter mailed to Scott was not received before decedent's death, thereby delivery did not take place; and the letter was sent to Scott who was not a trustee of Mrs. Huskins. We agree with defendants' contention that there is insufficient evidence of an actual or constructive delivery of the contents of the safe for the reasons set out below.

There are two types of gifts recognized in North Carolina: *inter vivos* gifts and gifts *causa mortis. Creekmore v. Creekmore*, 126 N.C. App. 252, 256, 485 S.E.2d 68, 71 (1997). "In all cases of gifts, whether inter vivos or causa mortis, there must be a delivery to complete the gift. And, in North Carolina, the law of delivery is the same for gifts inter vivos and gifts causa mortis." *Atkins v. Parker*, 7 N.C. App. 446, 450, 173 S.E.2d 38, 41 (1970) (citations omitted).

In order to constitute a valid gift, there must be present two essential elements: 1) donative intent; and 2) actual or constructive delivery. These two elements act in concert, as the present intention to make a gift must be accompanied by the delivery, which delivery must divest the donor of all right, title, and control over the property given. . . . The intention to give, unaccompanied by the delivery, constitutes a mere promise to make a gift, which is unsupported by consideration, and, therefore, non-obligatory

and revocable at will. Likewise, delivery unaccompanied by donative intent does not constitute a valid gift.

*Courts v. Annie Penn Memorial Hospital*, 111 N.C. App. 134, 138-39, 431 S.E.2d 864, 866 (1993) (citations omitted). Delivery of a gift may be "actual, constructive, or symbolic," therefore, there is no absolute rule as to the sufficiency of a delivery which is applicable to all cases. *Taylor v. Coburn*, 202 N.C. 324, 326, 162 S.E. 748, 749 (1932). Indeed, "[t]he delivery must be as perfect and as complete as the nature of the property and attendant circumstances will permit. . . . If actual delivery is impracticable, then there must be some act equivalent to it; it is not necessary that there be a manual delivery, or an actual tradition from hand to hand . . . ." 38A C.J.S. *Gifts* § 94 (1996).

In this case, there was some evidence of donative intent from the written notation that "the contents belong to your mother." Because this notation was found immediately below the combination to the safe, we may reasonably infer that decedent was making reference to the contents of the safe. Further, there is no elaboration as to the items included in the term "contents." We note that in this case, the safe in question had both upper and lower compartments, each of which had a combination. Decedent included both combinations in his handwritten note to Scott, and we might also reasonably infer that the term "contents" included everything to be found within either compartment. There is, however, a serious question about whether mailing the combinations and the note to Scott was a constructive delivery of the contents of the safe to Mrs. Huskins. Had the combinations of the safe and the accompanying note been mailed to Mrs. Huskins, or left for her in the apartment which she shared with decedent, her argument would be far stronger. Mrs. Huskins cites *Bynum v. Bank*, 221 N.C. 101, 19 S.E.2d 121 (1942), in which that decedent gave the key to a lockbox to a person and stated:

> Mattie, everything in this box is yours and this key unlocks this box and in this box it is that little box you sent to Pa, in that box is a little wooden box, the deed is in that, and in the box you sent to Pa, the big bank book and the little bank book is in there.

*Id.* at 104, 19 S.E.2d at 122. A jury found that there was a delivery of the bank book to the donee Mattie, and our Supreme Court upheld the jury verdict, stating:

> The delivery of a lock box and the keys thereto by a donor *to a donee*, together with a recital of the contents of the box and the

statement that "Everything in this box is yours," would constitute delivery of the contents of the box . . . .

*Id.* at 105, 19 S.E.2d at 123 (emphasis added). In *Bynum*, however, there was an actual delivery of the box to the donee, unlike the case before us. Therefore, although decedent in *Bynum* retained the box for safekeeping, the jury properly found that there was a valid delivery. *Accord, Fesmire v. Bank*, 267 N.C. 589, 592, 148 S.E.2d 589, 592 (1966) ("when there has been an *actual transfer of possession* with the requisite intent, the gift is not defeated by the subsequent return of the article to the possession of the donor for safekeeping[.]" (Emphasis added.))

We find no authority in North Carolina as to whether there is sufficient delivery of a gift when the subject of the gift is mailed by the donor to the donee, but not received by the donee until after the donor's death. There is authority in other jurisdictions that a valid delivery had been made when the gift was deposited with the United States Post Office. 38 Am. Jur. 2d *Gifts* § 23 (1999). Indeed, in *Ray v. Leader Federal Sav. & Loan Ass'n*, 40 Tenn. App. 625, 292 S.W.2d 458 (1953), it was determined that a gift of a bank deposit was completed when the passbook containing an assignment by the donor was picked up by the post carrier from the donor's mailbox and the donor then committed suicide. *But see, Pikesville Nat. Bank & Trust Co. v. Shirley*, 281 Ky. 150, 135 S.W.2d 426 (1939) (holding that there was no valid gift of the money in a savings account when the decedent directed his bank to transfer a deposit to his sister and enclosed the passbook, mailed the letter and committed suicide, and the bank did not receive the letter and passbook until after the death of decedent).

We note that in *Ray* the mailing was directed to the *donee*, not to a third person. In this case, however, the combinations were not mailed to the donee, Mrs. Huskins, but to a third party. Although the third party, Scott, was informed that the contents were his mother's property, there was no instruction that he deliver the property to his mother. In fact, although it is reasonable to interpret the note to Scott to mean that the contents in the safe were to be the separate property of Mrs. Huskins, the same language may be interpreted to mean that the moneys in the safe were to be used to fund the marital trust of which Mrs. Huskins is the sole beneficiary.

Other circumstances lead us to the conclusion that there was no valid delivery of the contents of the safe. While we agree with Mrs. Huskins that one cannot easily deliver a safe, that same consideration

does not apply to the delivery of the *contents* of the safe, especially when the parties in this case resided together in the apartment in which the safe was located. Considering the large amount of money found in the safe, decedent could have also delivered the combinations directly to Mrs. Huskins with an express statement of his intent that she have the contents.

Finally, we think it is crucial to our analysis that had decedent wanted to change his will to provide that the contents of the safe were to be the property of his wife, the record demonstrates that he was well aware of how to make those changes. On the day of his death, he wrote a second codicil to his will relating to the disposition of a certain tract of real estate in Mitchell County. The codicil was in his own handwriting, and read as follows:

> Sept 8—1996
>
> Codicil to my will
>
> I David H. Huskins will
> to my brother Joe D Huskins
> the tract of land I own
> in Mitchell County registered
> in book 274 page 571—
>
> David H. Huskins

The codicil prepared by decedent identifies the property in question, is an unmistakable statement of his donative intent, and is dated and signed by him. Clearly, decedent could have easily done the same as to the contents of his safe. Under the circumstances of this case, all of which we have carefully weighed and considered, we are not able to say that there was a valid delivery of the contents of the safe to Mrs. Huskins. The judgment of the trial court in this respect is reversed.

## II

**[2]** In *Creekmore*, this Court adopted the rule that "a donor's own check drawn on a personal checking account is not, prior to acceptance or payment by the bank, the subject of a valid gift either *inter vivos* or *causa mortis*." *Creekmore*, 126 N.C. App. at 257, 485 S.E.2d at 72. This holding was based on the fact that until the bank accepts and pays the money, the donor retains control over the funds. *Id.* at 257-58, 485 S.E.2d at 72. This is true even if the donor dies, because

the donor's command to the bank to pay the funds is revoked at the death of the donor. *Id.*

In this case, the check was not a valid gift because the bank had not paid on the check before decedent died, and the death of decedent revoked the relationship between decedent and the bank. Indeed, the death of decedent precluded the bank from honoring the check. As a result, the check to Mrs. Huskins was not a gift and is a part of decedent's probate estate. The decision of the trial court to the contrary is reversed.

### III

**[3]** Defendants next argue that the cash found on decedent's person was not a "personal effect" which would pass to Mrs. Huskins under Article II of decedent's will, but instead was a part of the residue which would pass to the trusts to be set up under the will. We disagree.

"When a will is presented for construction the intention of the testator is to govern and this is to be ascertained from the language used by him, giving effect, if possible, to every clause, phrase, and expression in the entire instrument." *Adler v. Trust Co.*, 4 N.C. App. 600, 603, 167 S.E.2d 441, 442 (1969). The *Adler* Court defined "personal effects" as " 'property especially appertaining to one's person and having a close relationship thereto.' " *Id.* at 605, 167 S.E.2d at 444 (quoting Webster's Third New International Dictionary (1968)). In *Adler*, the testator bequeathed his "personal effects" to his brother, Harold Adler. The trial court determined that Harold Adler did not receive the houseboat "Heaven" as a part of that bequest, and this Court affirmed. Noting that ascertaining the correct meaning of the phrase "personal effects" had often "occasioned considerable difficulty," we held that the testator in *Adler* did not intend the words "personal effects" to include all of his personal property, because that interpretation would have rendered the residuary clause nugatory. *Id.* at 604-05, 167 S.E.2d at 443-44. Further, the testator in *Adler* clarified the meaning of the term "personal effects" as used in his will by expressly

> includ[ing] jewelry, clothing, and his household furniture, as well as such of his china, silver and crystal as should not be desired by his two cousins. By using the words "personal effects" in conjunction with these other items, it is apparent that testator intended to include only things *ejusdem generis* with those cov-

ered by the other terms. A houseboat is clearly not *ejusdem generis* with articles of jewelry, clothing, household furniture, china, silver or crystal.

*Id.* at 605, 167 S.E.2d at 444.

In the present case, decedent clearly did not intend that "personal effects" be as broad in meaning as "personal property." In Article II, decedent bequeathed to his wife "all household furniture and furnishings which I may own at the time of my death, all of my personal effects and any automobiles which I may own at the time of my death." Then in Article III, which contains a residuary clause, decedent made disposition of the "rest, residue and remainder of [his] estate, both real and *personal* property . . . ." (Emphasis added.) We believe it is significant that decedent made no explicit disposition of any cash money which might be on his person at the time of his death. Although decedent knew well how to draft a holographic codicil to his will, as we pointed out above, he did not make any disposition of the cash money on his person at the time he decided to commit suicide. He also did not leave any other directions for the disposition of the funds, nor did he place them in his safe or other secure place. Moreover, by way of contrast, the other items of personal property expressly bequeathed by decedent were larger items including furniture and automobiles, both categories of personal property not carried on or about the person. In the absence of any clear indications to the contrary, in order to carry out the intention of decedent, the term "personal effects" should be given its ordinary and usual meaning.

Black's Law Dictionary defines "personal effects" as "[a]rticles associated with person, as property having more or less intimate relation to person of possessor . . . ." Black's Law Dictionary 1143 (6th ed. 1990). Likewise, "personal effects" are defined by The American Heritage Dictionary as "privately owned items, [such as] a wallet . . . that are . . . carried on one's person." The American Heritage Dictionary 925 (2d ed. 1985). In this case, decedent states in his will that *all* of his personal effects were bequeathed to his wife, Mrs. Huskins. If items such as a wallet are considered personal effects, it is impractical and arbitrary to then state that any items within the wallet are not personal effects or because the item was found in another pocket of the clothes decedent was wearing, that item was not a personal effect. Although the amount of cash in this case was substantial, we do not believe it would be prudent to formulate a "bright line" rule that large amounts of cash on a decedent's person

and in his wallet are as a matter of law not "personal effects." Instead, we must continue to ascertain the "true intention of each testator as expressed in his will . . . afresh in each individual case[,]" analyzing "the wording of each particular will as it relates to the circumstances of each individual testator." *Adler*, 4 N.C. App. at 604, 167 S.E.2d at 443.

Considering the wording of the will and the circumstances of decedent in the case before us, we hold that the trial court properly concluded that the cash money found on decedent's body is a "personal effect" and belongs to Mrs. Huskins according to decedent's will. The decision of the trial court in this regard is affirmed.

Affirmed in part, and reversed in part.

Judges LEWIS and TIMMONS-GOODSON concur.