**HILL v. HILL**

[142 N.C. App. 524 (2001)]

KEVIN E. HILL, Plaintiff v. ROBERT L. HILL and BOB HILL ENTERPRISES, INC.,
Defendants

No. COA00-381

(Filed 3 April 2001)

### 1. Conversion— gift of store from father to son—possession of assets insufficient

The trial court erred by failing to grant a directed verdict for defendants on a conversion claim arising from an alleged gift of a store from father to son where the record did not contain substantial evidence that the assets were gifted to plaintiff. Plaintiff may have had possession, but possession alone does not constitute delivery. Defendants were not divested of right, title, and control of the assets.

### 2. Malicious Prosecution— trespass—probable cause

The trial court erred by not granting defendants a directed verdict on plaintiff's claim for malicious prosecution in an action arising from the alleged transfer of a store from father to son and a subsequent trespass charge where the record did not contain substantial evidence that defendants instituted the trespass proceeding without probable cause. Based on the undisputed evidence, defendants had probable cause to believe plaintiff was on defendants' premises without authorization after being notified by defendants that plaintiff was not to remain on the premises.

### 3. Abuse of Process— trespass—legal purpose

The trial court erred by failing to grant a directed verdict for defendants on an abuse of process claim arising from the alleged transfer of a store from father to son and a subsequent trespass action where the undisputed evidence showed that the process was used for the legal purpose of removing plaintiff from property owned by defendants and keeping plaintiff off this property subsequent to his removal.

Judge Tyson dissenting.

Appeal by defendants from judgment filed 28 September 1999, amended judgment filed 12 November 1999, and from denial of motions for summary judgment, judgment notwithstanding the verdict or, in the alternative, for a new trial by Judge Carl L. Tilghman in Carteret County Superior Court. Heard in the Court of Appeals 30 January 2001.

**HILL v. HILL**

[142 N.C. App. 524 (2001)]

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C.R. Wheatly, Jr. and C.R. Wheatly, III, for plaintiff-appellee.*

*Mason & Mason, P.A., by L. Patten Mason, and Ward and Smith, P.A., by Kenneth R. Wooten, for defendant-appellants.*

GREENE, Judge.

Robert L. Hill (Hill) and Bob Hill Enterprises, Inc. (collectively, Defendants) appeal an amended judgment filed 12 November 1999, awarding Kevin E. Hill (Plaintiff) $450,001.00.[1]

The record shows that on 14 October 1996, Plaintiff filed a complaint against Defendants, alleging claims, in pertinent part, for conversion, malicious prosecution, abuse of process, and punitive damages. Plaintiff presented evidence at trial that Hill is the sole stockholder of Bob Hill Enterprises, Inc. In 1995, Bob Hill Enterprises, Inc. owned several businesses, including Discount City (the store), an appliance and furniture store located in Havelock, North Carolina. Plaintiff, Hill's son, began working at the store when he was fourteen years old, and he became manager of the store upon graduating from high school in 1983. In 1995, he was working as the manager of the store.

In late 1995, Hill contacted Ellis Nelson (Nelson) at the certified public accounting firm of McGladrey & Pullen to inquire about the procedure for transferring ownership of the store to Plaintiff. The accounting firm then prepared documents necessary for Plaintiff to obtain a federal employer identification number in his name, doing business as Discount City Super Store. The accounting firm also prepared an application for Plaintiff to obtain a sales tax number from the State Revenue Department in his name, doing business as Discount City Super Store.

Plaintiff testified at trial that in December 1995, Hill told Plaintiff he wished to transfer ownership of the store to Plaintiff effective 1 January 1996. Hill agreed to gift to Plaintiff the entire store, including its accounts receivable, inventory, bank account, and use of the build-

---

1. We note that the judgment in this case, dated 28 September 1999, awarded Plaintiff $630,001.00 following remittitur of a jury verdict awarding Plaintiff $6,800,001.00. The trial court, however, filed an amended judgment on 12 November 1999, following further remittitur of the jury verdict. Defendants give notice of appeal from both the judgment and amended judgment. Additionally, Defendants appeal the trial court's denial of their motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

ing owned by Bob Hill Enterprises, Inc. In early December 1995, Nelson sent Plaintiff a letter describing how the transfer would occur. In December 1995, Hill telephoned First Citizens Bank and told bank officials to transfer the store's account to Plaintiff's name, doing business as Discount City Super Store. Plaintiff subsequently went to First Citizens Bank for the purpose of transferring the store's checking account into his name, doing business as Discount City Super Store. Plaintiff ordered new checks and signature cards reflecting his name on the store's account held by First Citizens Bank.

Beginning 1 January 1996, Plaintiff continued to operate the store in the same manner he had operated it prior to that date. Plaintiff paid the store's bills, purchased inventory, and sold inventory. Plaintiff also filed sales tax reports and made sales tax payments in his name, doing business as Discount City Super Store, in January and in March of 1996; however, these sales tax payments were made for sales tax owed from sales made in 1995. Subsequent to 1 January 1996, all supplier accounts remained in the name of Bob Hill Enterprises, Inc. and all inventory was purchased using these accounts. Although Plaintiff set up an account in his name to purchase bedding for the store, the order for bedding was subsequently canceled. Prior to January 1996, the store's employees were paid by payroll checks issued from Bob Hill Enterprises, Inc. After 1 January 1996, Bob Hill Enterprises, Inc. no longer issued payroll checks to the store employees; rather, Plaintiff paid the employees from the store's bank account in Plaintiff's name. Plaintiff testified that during January 1996, Hill occasionally came to the store to give him advice and to discuss details regarding the transfer in ownership of the store. During this time period, Bob Hill Enterprises, Inc. owned the real property upon which the store was located, and Defendants did not enter into a lease with Plaintiff for the premises.

In February 1996, a dispute arose between Hill and Plaintiff regarding a payment received by the store for appliances sold in December 1995. As a result of the dispute, Hill telephoned Plaintiff and "cussed" at him. Hill subsequently arrived at the store and continued to "cuss" at Plaintiff and a physical altercation ensued. During the altercation, Hill told Plaintiff he was " 'out of here' " and that Hill would " 'cut [Plaintiff] out of [the] inheritance.' " Plaintiff then left the store. The following day, Plaintiff arrived at the store and continued to run the business as usual. Hill came to the store a few days later and informed Plaintiff he was closing the store. Plaintiff responded that Hill could not close the store because the store

**HILL v. HILL**

[142 N.C. App. 524 (2001)]

belonged to Plaintiff. Hill left the store and for several weeks thereafter Plaintiff continued to run the store.

On 12 March 1996, Havelock Chief of Police Michael Campbell (Campbell) went to see Plaintiff at the store. Campbell informed Plaintiff that Hill, by letter, requested that Plaintiff be removed from the store. The letter, which Campbell showed to Plaintiff, advised Plaintiff that as of 31 January 1996, Plaintiff had been removed as director of Bob Hill Enterprises, Inc., that as of 1 February 1996, Plaintiff had been removed as secretary of Bob Hill Enterprises, Inc., that "effective immediately" Plaintiff's employment with Bob Hill Enterprises, Inc. was terminated, and that Plaintiff was requested to "vacate" the store. The letter further stated that Plaintiff's continued presence at the store "will be considered trespassing and appropriate legal action will be taken against [Plaintiff]." Plaintiff showed Campbell documents purporting to reveal Plaintiff's ownership of the store, including bank account and sales tax identification numbers. Campbell then left the store and did not force Plaintiff to vacate the premises.

The following day, 13 March 1996, a Havelock police officer came to the store with a warrant charging Plaintiff with trespass. The officer arrested Plaintiff and took him before a magistrate, who placed Plaintiff under a $2,000.00 secured bond. As a condition of the bond, Plaintiff was prohibited from going to the store, from going to any other stores owned by Bob Hill Enterprises, Inc., and from having contact with Hill. At the time Plaintiff was arrested and taken from the store, the store had approximately $190,000.00 in inventory and $100,000.00 in accounts receivable. Upon his release on bond, Plaintiff returned to the store to find that it was locked, with no employees or customers inside. The store locks had been changed, and a "no trespassing" sign was posted on the premises. Plaintiff never returned to the store again. Plaintiff was tried on the trespass charge in Craven County District Court and the case was dismissed for lack of State's evidence. Hill subsequently transferred some of the store's inventory to other stores belonging to Bob Hill Enterprises, Inc. and sold the remainder of the business.

At the close of Plaintiff's evidence, Defendants made a motion to dismiss Plaintiff's claims against them. The trial court denied the motion.

Defendants presented evidence at trial that Hill did not intend to give Plaintiff the store; rather, he intended to sell the store to

Plaintiff. Hill testified he did not give the store to Plaintiff on 1 January 1996 and no transfer of the assets was ever made.

At the close of all the evidence, Defendants renewed their motion to dismiss Plaintiff's claims and the trial court denied the motion. The jury subsequently returned verdicts in favor of Plaintiff for $190,000.00 in property damage based on Plaintiff's claim for conversion, $110,000.00 for malicious prosecution, $1.00 for abuse of process, and $6,500,000.00 in punitive damages. By entry of judgment dated 28 September 1999, the trial court reduced the punitive damage award by remittitur to $330,000.00. On 8 October 1999, Defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied both motions, but filed an amended judgment on 12 November 1999 further reducing the punitive damage award to $250,000.00, and reducing the malicious prosecution award to $10,000.00.

---

The issues are whether: (I) the record contains substantial evidence Defendants gifted the assets of the store to Plaintiff and, if not, whether a directed verdict should have been granted in favor of Defendants on Plaintiff's conversion claim; (II) the record contains substantial evidence Defendants instituted a criminal proceeding against Plaintiff for trespass without probable cause and, if not, whether a directed verdict should have been granted in favor of Defendants on Plaintiff's malicious prosecution claim; and (III) the record contains substantial evidence Defendants instituted an action for trespass against Plaintiff in order to obtain a result not properly obtainable and, if not, whether a directed verdict should have been granted in favor of Defendants on Plaintiff's abuse of process claim.

Initially, we note Defendants did not make a motion for directed verdict at trial; rather, Defendants made a motion to dismiss Plaintiff's claims at the close of Plaintiff's evidence and at the close of all the evidence. "Only in an action tried without a jury may the defendant move for an involuntary dismissal [under Rule 41 of the North Carolina Rules of Civil Procedure] on the ground that upon the facts and the law the plaintiff has shown no right to relief." *Beam v. Kerlee*, 120 N.C. App. 203, 213, 461 S.E.2d 911, 919 (1995), *cert. denied*, 342 N.C. 651, 467 S.E.2d 703 (1996). In this case, therefore, the proper motion for Defendants to make to challenge the sufficiency of the evidence would have been a motion for directed verdict. *See id.* We, nevertheless, elect to treat Defendants' motions to dis-

miss as motions for directed verdict in order to reach the merits of Defendants' appeal. *See Hill v. Lassiter*, 135 N.C. App. 515, 517, 520 S.E.2d 797, 800 (1999) (electing to treat improper motion for directed verdict as Rule 41(b) motion in order to pass on merits of trial court ruling).

A moving party is entitled to a directed verdict against the party bearing the burden of proof when, viewing the evidence in the light most favorable to the party bearing the burden of proof, there is no substantial evidence to support that party's claim. *Cobb v. Reitter*, 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

I

[1] Defendants argue Plaintiff did not present substantial evidence Defendants gifted to Plaintiff the store merchandise, accounts receivable, equipment, furnishings, and records (the assets); thus, Defendants were entitled to a directed verdict on Plaintiff's conversion claim. We agree.

Plaintiff's claim for conversion is based on his alleged ownership of the assets, which Plaintiff claims were gifted to him by Defendants on 1 January 1996.[2] Plaintiff argues that subsequent to this gift, Defendants transferred some of the assets to other stores owned by Bob Hill Enterprises, Inc. and sold the remaining assets.

"Conversion is defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.' " *Gallimore v. Sink*, 27 N.C. App. 65, 67, 218 S.E.2d 181, 183 (1975) (quoting *Wall v. Colvard, Inc.*, 268 N.C. 43, 49, 149 S.E.2d 559, 564 (1966)). Thus, a party cannot convert assets belonging to him.

"In order to constitute a valid gift, there must be present two essential elements: 1) donative intent; and 2) actual or constructive

---

2. Plaintiff's claim for conversion does not include a claim against Defendants for conversion of the store's bank account; thus, whether the bank account was gifted to Plaintiff is not at issue in this case. We, nevertheless, note the undisputed evidence shows Plaintiff retained possession of all funds in the store's bank account and Plaintiff, therefore, would have no ground to claim these funds had been converted by Defendants.

delivery." *Courts v. Annie Penn Memorial Hospital,* 111 N.C. App. 134, 138, 431 S.E.2d 864, 866 (1993). Delivery "must divest the donor of all right, title, and control over the property given." *Id.* Delivery of a gift " 'must be as perfect and as complete as the nature of the property and attendant circumstances will permit. . . . If actual delivery is impracticable, then there must be some act *equivalent* to it.' " *Huskins v. Huskins,* 134 N.C. App. 101, 105, 517 S.E.2d 146, 148 (1999) (emphasis added) (quoting 38A C.J.S. *Gifts* § 94 (1996)), *cert. denied,* 351 N.C. 355, —— S.E.2d —— (2000).

In this case, the evidence, viewed in the light most favorable to Plaintiff, shows: in December 1995, Hill expressed an intent to give Plaintiff the store on 1 January 1996; in January 1996, Plaintiff continued to operate the store as he always had done, which included selling inventory and placing orders for inventory; subsequent to 1 January 1996, all supplier accounts remained in the name of Bob Hill Enterprises, Inc.; Plaintiff set up an account in his name to purchase bedding for the store, though the order for bedding was subsequently canceled; beginning in January 1996, Plaintiff paid employees, who had previously been paid by Bob Hill Enterprises, Inc., out of the store account which had been transferred to Plaintiff's name in December 1995; the building occupied by the store was at all times owned by Bob Hill Enterprises, Inc.; and Plaintiff did not enter into any lease of the premises or pay any rent for the use of the premises. The evidence, which was not controverted, shows all store inventory purchased after 1 January 1996 was purchased using the supplier accounts of Bob Hill Enterprises, Inc. The record contains no evidence the ownership of inventory purchased prior to 1 January 1996 which remained in the store subsequent to that date was transferred to Plaintiff. Additionally, the record does not contain any evidence that ownership of accounts receivable or store equipment was transferred to Plaintiff from Bob Hill Enterprises, Inc. Finally, the real property itself, upon which the store was located, remained under the ownership of Bob Hill Enterprises, Inc. and Plaintiff did not enter into any lease for the use of the real property. Thus, the record does not contain any evidence that subsequent to 1 January 1996, the alleged date of the gift, Defendants were divested of "right, title, and control" over the assets. While Plaintiff may have had possession of the assets, possession alone does not constitute delivery. *Smith v. Smith,* 255 N.C. 152, 155, 120 S.E.2d 575, 578 (1961) (possession by donee insufficient to show delivery when there is no evidence donor "divest[ed] himself of all right and title to, and control of, the gift"). Although Plaintiff argues in his brief to this Court that the transfer of

the bank account to Plaintiff is some evidence the assets were delivered to him, Plaintiff's ownership of the bank account is not relevant to whether Plaintiff had "right, title, and control" over the assets. This is because Defendants could gift the bank account to Plaintiff without delivering to Plaintiff the other assets of the store. The record, therefore, does not contain substantial evidence the assets were gifted to Plaintiff. Accordingly, the trial court erred by failing to grant a directed verdict for Defendants on Plaintiff's conversion claim, as Defendants could not convert assets which belonged to them.

## II

**[2]** Defendants argue the trial court erred by failing to grant Defendants a directed verdict on Plaintiff's claim for malicious prosecution. We agree.

"A person commits the offense of second degree trespass if, without authorization, he enters or remains on premises of another: (1) After he has been notified not to enter or remain there by the owner . . . ." N.C.G.S. § 14-159.13 (1999).

"In order to recover in an action for malicious prosecution, plaintiff must establish that defendant: (1) instituted, procured or participated in the criminal proceeding against plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of plaintiff." *Williams v. Kuppenheimer Manufacturing Co.*, 105 N.C. App. 198, 200, 412 S.E.2d 897, 899 (1992). Probable cause is " 'the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution.' " *Id.* at 201, 412 S.E.2d at 900 (quoting *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978)). When the facts are not in dispute, the question of whether probable cause exists is a question of law. *Id.*

In this case, the undisputed evidence shows Bob Hill Enterprises, Inc. owned the premises upon which the store was located; Plaintiff did not enter into a written or unwritten lease with Bob Hill Enterprises, Inc. to occupy the premises; on the day prior to his arrest for trespass, Plaintiff received written notification that "effective immediately" he was no longer employed by Bob Hill Enterprises, Inc.; and the written notification requested that Plaintiff "vacate" the premises and notified Plaintiff that his continued presence at the store would be "considered trespassing." Based on this undisputed evidence, Defendants had probable cause to believe Plaintiff was on Defendants' premises without authorization after

being notified by Defendants that Plaintiff was not to remain on the premises. The record, therefore, does not contain substantial evidence Defendants instituted the trespass proceeding without probable cause. Accordingly, Defendants were entitled to a directed verdict on Plaintiff's malicious prosecution claim.

### III

**[3]** Defendants argue the trial court erred by failing to grant a directed verdict in favor of Defendants on Plaintiff's abuse of process claim. We agree.

Abuse of process is " 'the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended to be secured.' " *Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965) (quoting *Melton v. Rickman*, 225 N.C. 700, 703, 36 S.E.2d 276, 278 (1945)). Evidence is insufficient to support an action for abuse of process when the process instituted "was used only for the purpose for which it was intended, and the result accomplished was warranted and commanded by the writ." *Id.*

In this case, the process instituted against Plaintiff by Defendants was a criminal charge of second-degree trespass. The undisputed evidence shows the process was used for the lawful purpose of removing Plaintiff from property owned by Defendants and keeping Plaintiff off of this property subsequent to his removal. This result was permitted based on the warrant for Plaintiff's arrest and his subsequent bond. The record, therefore, does not contain substantial evidence of Plaintiff's abuse of process claim. Accordingly, Defendants were entitled to a directed verdict on Plaintiff's abuse of process claim.

Because directed verdicts should have been granted in favor of Defendants on Plaintiff's claims for conversion, malicious prosecution, and abuse of process, we reverse the trial court's 28 September 1999 judgment and 12 November 1999 amended judgment. Furthermore, because we reverse these judgments, we need not address Defendants' additional assignments of error.

Reversed.

Judge JOHN concurs.

Judge TYSON dissents.

TYSON, Judge, dissenting.

I would hold that the trial court did not err in denying defendants' motions to dismiss and judgment notwithstanding the verdict, or new trial, on plaintiff's claims for conversion, malicious prosecution, and abuse of process. I would therefore reach defendants' additional assignments of error to the following trial court rulings: (1) the admission of rebuttal testimony from Hill's ex-wife; (2) the failure to allow counsel for the parties to make closing arguments on the issue of punitive damages; (3) the admission of hearsay statements; and (4) the failure to find that plaintiff's counsel violated the North Carolina Rules of Professional Conduct by referring to Hill as a "liar".

I would hold that defendants received a trial free of prejudicial error. Accordingly, I respectfully dissent.

## I. Denial of motions to dismiss

I disagree with the majority's opinion that the trial court erred in denying defendants' motions to dismiss at the close of plaintiff's evidence, and at the close of all evidence. The standard of review for this Court on the trial court's denial of a motion for directed verdict is "whether, upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury." *Fulk v. Piedmont Music Center*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000) (citing *Abels v. Renfro Corp.*, 335 N.C. 209, 214-15, 436 S.E.2d 822, 825 (1993)) (emphasis supplied).

A directed verdict should be granted in favor of the moving party only where " 'the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn,' and 'if the credibility of the movant's evidence is manifest as a matter of law.' " *Law Offices of Mark C. Kirby, P.A. v. Industrial Contractors, Inc.*, 130 N.C. App. 119, 123, 501 S.E.2d 710, 713 (1998) (quoting *Lassiter v. English*, 126 N.C. App. 489, 493, 485 S.E.2d 840, 842-43, *disc. review denied*, 347 N.C. 137, 492 S.E.2d 22 (1997)).

The majority fails to review the evidence in the light most favorable to plaintiff, nor does it afford plaintiff the benefit of every reasonable inference to be drawn therefrom. I cannot agree that the credibility of the evidence in this case is manifest as a matter of law, or that the evidence so clearly establishes the matters at issue that no

reasonable inference to the contrary may be drawn. The jury's verdict in favor of plaintiff, and the trial court's denial of judgment notwithstanding the verdict, or new trial, establishes that reasonable inferences to the contrary were, in fact, drawn by those who viewed the witnesses, heard the testimony, and personally examined the evidence presented at trial.

The vast majority of the evidence presented was witness testimony. The testimony was often contradictory. I cannot agree with the majority that the credibility of the crucial and sometimes contradictory evidence in this case is so clear that it can be ruled upon as a matter of law. The effect of the majority is to usurp the jury's function in weighing credibility of the witnesses and the other evidence presented.

## A. Evidence of gift

I disagree with the majority that the evidence of gift, viewed in the light most favorable to plaintiff, conclusively establishes that there is no reasonable inference that Hill gifted the store to plaintiff, thereby precluding plaintiff's claim for conversion. Both the trial court and the finders of fact found to the contrary.

"In order to constitute a valid gift, there must be present two essential elements: 1) donative intent; and 2) actual or constructive delivery." *Huskins v. Huskins*, 134 N.C. App. 101, 104, 517 S.E.2d 146, 148 (1999), *cert. denied*, 351 N.C. 355, —— S.E.2d —— (2000). There is "no absolute rule as to the sufficiency of a delivery which is applicable to all cases." *Id.* at 105, 517 S.E.2d at 148. Delivery may be actual, constructive, or symbolic, and must only be " 'as perfect and as complete as the nature of the property and attendant circumstances will permit.' " *Id.* (quoting 38A C.J.S. Gifts § 94 (1996)).

The evidence presented showed that in late 1995, Hill contacted Ellis Nelson at the certified public accounting firm of McGladrey & Pullen to inquire about the procedure for transferring the store to plaintiff. Mr. Nelson sent Hill a letter in November 1995 detailing the procedure for transferring the store to plaintiff. The accounting firm prepared documents by which plaintiff obtained a federal employer identification number in his name, doing business as ("d/b/a") "Discount City Super Store." The accountants also prepared an application for the State Revenue Department for a sales tax number in plaintiff's name, d/b/a Discount City Super Store. Said application was filed and the tax number was issued.

**HILL v. HILL**

[142 N.C. App. 524 (2001)]

Plaintiff testified that in December 1995, Hill told plaintiff he wished to transfer the store to plaintiff's name effective 1 January 1996. <u>Plaintiff testified</u> that Hill agreed to gift to plaintiff the entire store, including its accounts receivable, inventory, bank account, <u>and use of the building owned by the Corporation</u>. On 7 December 1995, McGladrey & Pullen sent plaintiff a letter describing how the transfer would occur.

Plaintiff testified that the transfer process began in December 1995 when Hill contacted First Citizens Bank. Hill told bank officials to transfer the store's account to plaintiff, d/b/a Discount City Super Store. Thereafter, plaintiff went to First Citizens Bank and the store's checking account was transferred to plaintiff's ownership. Plaintiff ordered new checks and executed signature cards reflecting plaintiff's ownership of the store.

Michael Thompson, a Vice-President at the First Citizens Bank in Havelock verified his signature on a bank document stating the following:

> In late December, 1995, per a phone conversation with Bob Hill of Bob Hill Enterprises, Inc., First Citizens was authorized to change the name of the account to 27822 70469 from Bob Hill Enterprises, Inc., DBA Discount City to Discount City Super Store, <u>which is the name Kevin E. Hill assumed for his business</u>.

(emphasis supplied).

Joseph Simpson, store employee, testified to a conversation he had with Hill wherein Mr. Simpson told Hill about a customer complaint. Hill responded that "starting first of the year, you can refer all of [the complaints] to [plaintiff] because the store is going to be his and all of the headaches that come with it."

Beginning 1 January 1996, plaintiff operated the store, paid the store's bills, and employees' wages and social security taxes, purchased and sold new inventory, and filed sales tax reports in the name of Kevin E. Hill d/b/a Discount City Super Store. Plaintiff testified that during January 1996, Hill came by the store occasionally to give plaintiff advice on running the store. At no time during these visits did Hill indicate that he had not transferred the store to plaintiff, or that the business still belonged to the corporate defendant. Rather, after 1 January 1996, Hill regularly discussed with plaintiff the details of the transfer and of setting up the new accounts in plaintiff's name. There is no evidence that Hill ever expressed a belief that he

maintained control over the store prior to the disagreement and ensuing physical altercation between plaintiff and Hill on 5 February 1996.

Prior to January 1996, the store's employees were paid by payroll checks issued from the corporate defendant. After 1 January 1996, the Corporation no longer issued payroll checks to the store employees. Plaintiff paid all store employees from store accounts that had been transferred into his name. Mr. Simpson testified that he received his last pay check from the Corporation in December 1995. He testified that he was told by an employee of the corporate defendant that the reason for the change was that "the store is [plaintiff's] January 1st. [Hill] gave it to [plaintiff] and he will be paying you from now on."

The majority's opinion relies heavily on the fact that after 1 January 1996, the store's new inventory was still being purchased from supplier accounts under the corporate defendant's name. The fact that not all accounts had been officially changed to plaintiff's name only five weeks into a transfer of a business does not support a conclusion that a valid transfer of the business did not occur. *See Huskins v. Huskins*, 134 N.C. App. at 105, 517 S.E.2d at 148 (there is "no absolute rule as to the sufficiency of a delivery which is applicable to all cases."). Delivery may be actual, constructive, or symbolic, and must only be " 'as perfect and as complete as the nature of the property and attendant circumstances will permit.' " *Id.* (quoting 38A C.J.S. Gifts § 94 (1996)) (emphasis supplied).

Plaintiff testified that various purchase accounts and supplier accounts were in the process of being changed to plaintiff's name, and that sale revenues were placed in the store's account under plaintiff's ownership. Plaintiff testified that the paperwork on changing ownership on all accounts was in the process of being completed when plaintiff was arrested for trespass and prevented from returning to the store, at Hill's direction. The majority's reliance on supplier accounts is misplaced.

The majority's focus on the fact that no lease was executed for the premises between plaintiff and Hill is also misplaced. Assuming no lease existed, that issue is irrelevant to whether Hill gifted the business and all of its assets to plaintiff. The presence of a gratuitous lease, given the familial relationship between the parties, is not unusual, nor is it of consequence to the issue of a valid gift of the business, which is personal property.

Also unpersuasive is defendants' argument that Hill did not have the authority to transfer the store to plaintiff because the store was owned by the Corporation. The evidence establishes that Hill was the Corporation's sole stockholder and sole member of its board of directors. He had complete authority and dominion over the functioning of his business, and he maintained the ability to transfer the corporate assets as he deemed necessary. I would also overrule this assignment of error.

This Court must view this evidence in the light most favorable to plaintiff, giving plaintiff the benefit of every reasonable inference to be drawn therefrom. *See Fulk*, 138 N.C. App. at 429, 531 S.E.2d at 479. The evidence was sufficient to warrant the jury's consideration on the issues of Hill's intent to give plaintiff the business as of 1 January 1996, and Hill's actual or constructive delivery of that business to plaintiff as of that date. The majority must assume that every item in the store, including plaintiff's checks and bank records, belonged to defendants in order to defeat plaintiff's claim for conversion, when viewed in the light most favorable to plaintiff. I would hold that plaintiff's claim, based on conversion of the store's assets, was appropriately submitted to the jury.

### B. Malicious prosecution

I disagree with the majority's holding that the jury was not entitled to consider the issue of malicious prosecution. In order to survive a motion for directed verdict on a claim of malicious prosecution, a plaintiff must show evidence that the defendant " '(1) instituted, procured or participated in the criminal proceeding against [the] plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of [the] plaintiff.' " *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996) (quoting *Williams v. Kuppenheimer Manufacturing Co.*, 105 N.C. App. 198, 200, 412 S.E.2d 897, 899 (1992)). A plaintiff may establish the element of malice by showing that the defendant "was motivated by personal spite and a desire for revenge" or that the defendant acted in a manner showing " 'reckless and wanton disregard' " for the plaintiff's rights. *Moore v. City of Creedmoor*, 345 N.C. 356, 371, 481 S.E.2d 14, 24 (1997) (quoting *Jones v. Gwynne*, 312 N.C. 393, 405, 323 S.E.2d 9, 16 (1984)).

On this claim, plaintiff produced evidence that a dispute arose between plaintiff and Hill in February 1996. Plaintiff claimed that he needed to pay supplier invoices from $17,000.00 paid by the United

HILL v. HILL

[142 N.C. App. 524 (2001)]

States government for appliances sold by the store to the Department of Defense in December 1995. Plaintiff testified that, prior to transfer of the store, it was customary for the Corporation to deposit all revenues into the account of the particular store from which the sales were made. Plaintiff testified that the corporate cashier called him and told him a $17,000.00 check was there for him to retrieve. Plaintiff went to the corporate office on 5 February 1996 to get the check, but upon arrival, was told that Hill had instructed the cashier not to give plaintiff the check.

Plaintiff testified that, upon his return to the store, Hill called to berate him for attempting to retrieve the check. Plaintiff testified that Hill "cussed" at him and told plaintiff the money was Hill's. Plaintiff responded that the money was for merchandise sold, and that the money was needed to pay the bills. Plaintiff testified that Hill was "cussing [him] out so bad" that he hung up the phone.

Hill arrived at the store moments later. Plaintiff testified that Hill continued to "cuss" at him, while plaintiff informed Hill that the money belonged in the store's account and was needed to pay bills. Plaintiff testified that Hill swung at him with his fists. A physical altercation ensued, in front of the store's employees, during which Hill told plaintiff he was "out of here" and that Hill would "cut [plaintiff] out of [the] inheritance." Plaintiff left the store to avoid further spectacle.

The following day, plaintiff arrived at the store and continued to run the business as usual. Hill came to the store days later and informed plaintiff that he was closing the store. Plaintiff responded that Hill could not close the store because the store belonged to plaintiff. Hill left the store. For several weeks afterward, plaintiff ran the store as usual.

On 12 March 1996, the Havelock Chief of Police, Michael Campbell, came to see plaintiff at the store. Chief Campbell informed plaintiff that Hill had requested by letter that plaintiff be removed from the store. The letter advised plaintiff that as of 1 February 1996, plaintiff's employment with the Corporation was terminated and he was required to vacate the premises. Plaintiff showed Chief Campbell the documents revealing plaintiff's ownership of the store, including the bank account and sale's tax identification numbers.

Plaintiff testified that, upon viewing plaintiff's documentation, Chief Campbell responded, "I am not going to do this. . . . This is

wrong . . . . I am going to go back and tell [Hill] that I am not going to tell you to leave the premises or remove you from here." Chief Campbell then warned plaintiff that if Hill "sees a magistrate and convinces him somehow . . . the Havelock police might have to come back."

The following day, 13 March 1996, a Havelock police officer came to the store with a warrant charging plaintiff with trespass. The officer arrested plaintiff at the store and took him to the magistrate, Thomas Mylett. Magistrate Mylett placed plaintiff under a $2,000.00 secured bond. As a condition of the bond, plaintiff was prohibited from going to the store, from going upon any of the Corporation's property, and from having contact with Hill. Plaintiff testified that at the time he was arrested and taken from the store, the store had approximately $190,000.00 in inventory, and $100,000.00 in accounts receivable.

Upon his release on bond, plaintiff returned to the store to find that it was locked, with no employees or customers inside. The store locks had been changed, and "no trespass" signs were posted on the premises. Plaintiff never returned to the store again. He testified that Hill transferred some of the store's inventory to other stores that still belonged to the Corporation, and sold the remainder of the business. Plaintiff was tried on the trespass charge in Havelock District Court. The case was dismissed for lack of State's evidence.

I would hold that, viewing this evidence in the light most favorable to plaintiff, as we are required to do, sufficient evidence exists of each element of plaintiff's malicious prosecution claim to submit the issue to the jury. The evidence is conclusive that Hill initiated the prosecution, and that the charge was eventually dismissed in favor of plaintiff. The evidence further established that on 12 March 1996, Chief Campbell came to the store to remove plaintiff from the premises upon Hill's request. Upon review of the documentation of Kevin's ownership, Chief Campbell did not remove Kevin. Instead, he stated to Kevin that he was "not going to do this," that removing plaintiff from the store was "wrong," and that he would tell Hill that plaintiff could not be removed from the premises.

Nevertheless, plaintiff was arrested and physically removed from the store at Hill's request on 13 March 1996. Plaintiff was placed under a $2,000.00 secured bond at Magistrate Mylett's office, and detained for several hours. Plaintiff's bond was conditioned upon his

not returning to any corporate premises, including plaintiff's own store, and having no contact with Hill. Evidence was introduced to show that the warrant and bond were issued as a result of Hill's personal relationship with Magistrate Mylett, as Chief Campbell had warned.

After being released on bond, plaintiff returned to the store to find that "no trespass" signs had been posted. The store locks had been changed, and plaintiff was unable to gain access to the store. Plaintiff was unable to obtain his records or personal effects from the store. The store's inventory was transferred to other stores still owned by the Corporation. After his arrest, plaintiff never re-entered the store. He lost his inventory, his accounts receivable and records, and he lost any interest he had in the business, which defendants later sold.

This evidence, viewed as to give plaintiff the benefit of every reasonable inference, is sufficient to overcome a motion for directed verdict on the elements of probable cause and malice. Defendants used criminal process to obtain a *de facto* injunction prohibiting plaintiff from accessing the store. Plaintiff's arrest, detention, and prosecution enabled Hill to obtain the desired result without having to submit to civil process. The majority's ruling on this issue as a matter of law again disregards the proper standard of review, which requires that a motion for directed verdict be denied where, in the light most favorable to plaintiff, there exists a reasonable inference to the contrary. See, *e.g.*, *Fulk, supra*; *Abels, supra*; *Law Offices of Mark C. Kirby, P.A., supra*; *Lassiter, supra*. Again, the jury's verdict on this issue, and the trial court's rulings, establish the presence of a reasonable inference to the contrary.

I am also unpersuaded by defendants' argument that plaintiff cannot obtain compensatory damages for malicious prosecution where plaintiff failed to show pecuniary loss. This again assumes that everything in the store belonged to defendants, including the store's checkbook and bank records, which undisputedly belonged to plaintiff. At the time of plaintiff's arrest, the store had approximately $190,000.00 in inventory and $100,000.00 in accounts receivable. Defendants changed the store locks and prohibited plaintiff from recovering any of the store's assets. After the trial at which plaintiff's trespass charge was dismissed, the store no longer existed. I would overrule defendants' assignment of error.

**HILL v. HILL**

[142 N.C. App. 524 (2001)]

## C. Abuse of process

I disagree with the majority that the trial court erred in submitting plaintiff's claim for abuse of process to the jury where the evidence was insufficient to support the claim. Our Supreme Court described the tort of abuse of process in *Fowle v. Fowle*, 263 N.C. 724, 140 S.E.2d 398 (1965):

'[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended to be secured.'

*Id.* at 728, 140 S.E.2d at 401 (quoting *Melton v. Rickman*, 225 N.C. 700, 36 S.E.2d 236 (1945).

The same evidence that supports plaintiff's malicious prosecution claim applies here. This evidence tends to establish that defendants used the criminal process for the ulterior purpose of prohibiting plaintiff from accessing the store. During the hours that plaintiff was detained by Magistrate Mylett, the store locks were changed and the store was closed. Plaintiff no longer had access to the store or its contents. In essence, the prosecution, detention, and bond functioned as defendants' opportunity to resolve the ownership dispute in their favor. When considered in the light most favorable to plaintiff, this evidence is sufficient to allow the jury to consider the issue.

## II. Admission of rebuttal testimony

Defendants also assign error to the trial court's admission of rebuttal testimony from Hill's ex-wife and plaintiff's mother, Evelyn Mallnauskas. Specifically, defendants argue that Ms. Mallnauskus' testimony was improper because she was not named on the pre-trial order witness list, and her testimony was not rebuttal testimony, but was offered for the sole purpose of "inflaming the jury."

Ms. Mallnauskus was called as a witness in response to defendants' calling of Rhonda Hill Collins. Ms. Collins also was not designated as a witness on the pre-trial order. Ms. Collins, daughter of Hill, and Ms. Mallnauskus, testified to witnessing a physical fight between her parents, which she described as "a mutual fight." Ms. Mallnaukus was called in rebuttal and testified that Hill was the aggressor in their physical fights, and that he had broken her nose with his fist.

"Whether to admit evidence not listed in a pretrial order is entrusted to the discretion of the trial court. . . . The trial court's decision will not be reviewed unless an abuse of discretion is shown." *Beam*, 120 N.C. App. at 214, 461 S.E.2d at 920 (citing *Pittman v. Barker*, 117 N.C. App. 580, 588, 452 S.E.2d 326, 331 (1995)). Defendants have failed to show any such abuse of discretion. Ms. Mallnauskus was called in rebuttal to the defense's witness, who was also not listed on the pre-trial order.

Defense counsel generally objected to Ms. Mallnauskus testifying on grounds that it was only for the purpose of inflaming the jury. The trial court correctly limited the testimony to rebuttal purposes. Despite defense counsel's initial general objection, at no time during direct examination did counsel object to any specific question or answer as being outside the trial court's instruction. The transcript reveals that Ms. Mallnauskus testified about matters defendants elicited initially through Collins' testimony. I would overrule this assignment of error.

### III. Closing arguments on punitive damages

Defendants assign error to the trial court's failure to "allow counsel for the parties to make a jury argument regarding the punitive damage issue." The record reveals that neither party ever requested or moved the trial court to allow for such arguments. Defendants also did not object at trial to the absence of arguments pertaining to punitive damages. *See* N.C. R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). I would hold that defendants failed to preserve this argument for our review.

### IV. Introduction of hearsay statements

Defendants argue that the trial court erred in allowing plaintiff to testify at various times to what bank officials told him regarding transfer of the store's account from the corporate name to plaintiff's name. Defendants argue that such statements were for the purpose of proving the truth of the transfer of the account, and thus, were prejudicial hearsay.

In reviewing the admission of the evidence at trial, "[t]he burden is on the appellant not only to show error but also to show that the

error was prejudicial and probably influenced the jury verdict." *FCX, Inc. v. Caudill*, 85 N.C. App. 272, 280, 354 S.E.2d 767, 773 (1987). "Where evidence is properly admitted through one witness, the defendant will not be heard to complain that the same evidence, improperly admitted through a different witness, was prejudicial error." *State v. Kimble*, —— N.C. App. ——, ——, 535 S.E.2d 882, 888 (2000) (citing *State v. Washington*, 131 N.C. App. 156, 163-64, 506 S.E.2d 283, 288 (1998) (error in admitting hearsay testimony harmless where improper testimony was repetitive of properly admitted testimony of other witnesses at trial)).

I would hold that any error in allowing plaintiff's testimony was harmless, in light of the testimony of First Citizens Bank Vice-President, Mr. Thompson, and the accompanying documents introduced. Mr. Thompson's testimony clearly established that a transfer of the store account occurred at Hill's direction. Mr. Thompson verified his signature on a bank document stating that the account was transferred from the corporate name to plaintiff as a result of a December 1995 phone call from Hill. Any statements made by plaintiff which were offered to show that the transfer occurred at Hill's direction were cumulative or repetitive and were not prejudicial to defendants.

## V. Violation of Rules of Professional Conduct

Defendants also assign error to the trial court's failure to find that plaintiff's counsel violated the State Rules of Professional Conduct. Specifically, defendants argue that counsel's use of the word "liar" to describe Hill in a written response to defendants' motion for judgment notwithstanding the verdict was a violation of Rule 3.4(e) of the Rules of Professional Conduct. Under this rule, an attorney is prohibited from stating in trial a personal opinion as to a party's culpability or credibility.

However, plaintiff's counsel did not make the statement before the jury, or "in trial." The statement was written and submitted to the trial court following the jury's verdict after defendants moved for judgment notwithstanding the verdict and in response to a question from the trial court. In *Stiller v. Stiller*, 98 N.C. App. 80, 82-83, 389 S.E.2d 619, 620 (1990), this Court rejected the appellant's argument that counsel's sending of letters to the trial court after conclusion of the hearing unduly influenced the court and violated various Rules of Professional Conduct. We stated:

**DAVIDSON v. UNIV. OF N.C. AT CHAPEL HILL**

[142 N.C. App. 544 (2001)]

Although the letters arguably may contain remarks and references that were not absolutely necessary to carry out the court's business, plaintiff has failed to show that these remarks resulted in 'undue influence' on the trial court. Additionally, we note that if plaintiff feels that defendant's counsel has violated a Rule of Professional Conduct the appropriate forum for that inquiry is the State Bar.

*Id.*

Defendants failed to forecast any evidence that plaintiff's counsel's describing Hill as a "liar" in a document to the trial court in any way unduly influenced the court's ruling on defendants' post-trial motions. In fact, following the alleged violation, the trial court further significantly remitted the jury's award in favor of defendants. Defendants have also failed to show how the trial court's failure to find a violation was more than harmless error. *See H.B.S. Contractors, Inc. v. Cumberland County Board of Educ.*, 122 N.C. App. 49, 56, 468 S.E.2d 517, 522, *disc. review improvidently granted,* 345 N.C. 178, 477 S.E.2d 926 (1996) (even if trial court erred in failing to find violation of Rules of Professional Conduct, remedy is unavailable unless appellant "can establish the error was prejudicial and, without the error, a different result would likely have ensued."). I would overrule this assignment of error.

I would hold that defendants received a fair trial, free from prejudicial error. I respectfully dissent.