This is a controversy without action submitted under G.S., 1-250, etseq. (C. S., 626-628), upon the following agreement as to the facts, of which the exhibits are a part:
"1st. That under date of July 1, 1940, L. S. Blades and wife, Grace M. Blades, executed and delivered an instrument in which the above named plaintiffs were named Trustees, and a copy of which is hereto attached, made a part hereof, and marked EXHIBIT A.
"2nd. That thereafter said L. S. Blades and wife executed and delivered to plaintiffs a deed, copy of which is hereto attached, the description of which embraces the lands which plaintiffs agreed to sell and convey to defendant, as hereinafter referred to, copy of which is hereto attached, EXHIBIT B. *Page 33 
"3rd. That both of the above instruments were duly recorded in Chowan County.
"4th. That shortly prior to November 2, 1942, plaintiffs entered into an agreement with the defendant by the terms of which plaintiffs agreed to execute and deliver to defendant a good and sufficient deed conveying to defendant a portion of the lands described in EXHIBIT B, free and clear of all encumbrances, which lands defendant agreed to buy and to pay therefor the sum of $300.00.
"5th. That pursuant to said agreement plaintiffs, under date of November 2, 1942, executed and tendered to the defendant a deed for the property in question, copy of which is hereto attached, marked EXHIBIT C, the original thereof having been duly signed and acknowledged by the grantors whose names appear therein; and at the time of tender demanded of the defendant the purchase price of $300.00.
"6th. That defendant, while recognizing the validity of the agreement on its part to purchase said lands as herein set forth, refused to receive the deed and pay the purchase price for the reason that said deed, according to the contention of the defendant, does not convey the property in fee simple to defendant.
"7th. That Charles C. Blades, James Evans Blades, Melick West Blades and Lemuel Showell Blades, Jr., are all married and have children.
"8th. Under the agreed facts as herein set forth the following contentions have arisen:
"(a) The plaintiffs contend that the deed tendered by them is a good and sufficient deed conveying the property in question in fee simple.
"(b) The defendant contends that the deed tendered as aforesaid is not sufficient to convey to it a good and perfect fee simple title to said lands, nor can the plaintiffs as Trustees convey such a title.
"WHEREFORE, the parties hereto pray that the Court will make decision as to the respective contentions of the parties, and render judgment accordingly. If the Court be of the opinion that the deed, EXHIBIT C, is sufficient to convey to this defendant a good and perfect fee simple title, and shall so decree, then it is agreed that judgment may be entered requiring the defendant to accept the deed and pay the purchase price of $300.00.
"But if the Court shall be of the opinion that said deed is not sufficient to convey to the defendant a good and perfect fee simple title, then it is agreed that judgment shall be entered that the plaintiff Trustees shall recover nothing of the defendant.
 W. A. WORTH. Attorney for Plaintiffs. J. KENYON WILSON, Attorney for Defendant, *Page 34 
"EXHIBIT A.
"NORTH CAROLINA, PASQUOTANK COUNTY.
"THIS INDENTURE made this 1st day of July, 1940, between L. S. Blades and wife, Grace M. Blades, parties of the first part, sometimes referred to as Grantors, and Charles Camden Blades, James Evans Blades, Melick West Blades and Lemuel Showell Blades, Jr., Trustees, parties of the second part, sometimes herein referred to as Trustees, all of Elizabeth City, of the above captioned County and State,
"WITNESSETH: That the said Grantors in consideration of the sum of One Dollar, receipt of which is hereby acknowledged, and the performance of certain duties on the part of the Trustees, which they covenant to perform, the said Grantors have bargained and sold, and by these presents do convey unto the said Trustees, their successors and assigns, the following described property:
"That certain lot on the corner of Main and Selden Streets which was conveyed to L. S. Blades, by several deeds, to-wit:
"H. C. Pinnix to L. S. Blades, in Book 29, page 607; C. W. Stevens to L. S. Blades, in Book 75, page 399; C. W. Stevens to L. S. Blades, in Book 42, page 139; Corporation of Elizabeth City to various owners, quitclaim deed for alley, in Book 75, page 406, all of the Pasquotank County public registry.
"To HAVE AND TO HOLD the said property together with all privileges and appurtenances thereunto belonging or in any wise appertaining unto the said Trustees, their successors and assigns, in fee simple forever.
"IN TRUST, nevertheless, and to and for the uses and purposes hereinafter stated and declared:
"1st: THE PURPOSE of this trust being for the economic protection of my Sons, Charles Camden Blades, James Evans Blades, Melick West Blades, and Lemuel Showell Blades, Jr., individually, it being the intent of this instrument to convey in trust, and subject to the conditions of said trust, an equal undivided interest to each of my aforementioned four sons in the property herein conveyed.
"2nd: THE TRUSTEES shall have the power, and the power is hereby granted, to manage the property above referred to or any other property, either real or personal or mixed, which may in the future be transferred to them as Trustees under this indenture (which they are hereby empowered to receive as Trustees of this Indenture) in such a manner and upon such terms and conditions in all respects, as the Trustees in their sole discretion may think fit; and they are hereby empowered upon their discretion, from time to time, to sell, mortgage, hypothecate, lease and convey upon such terms as they may deem best, any or all of the real or personal estate belonging to the Trust and re-invest proceeds at their *Page 35 
absolute discretion and the proceeds from the same shall be a part of the principal trust estate and be subject to all the provisions thereof. And I authorize said Trustees to execute and acknowledge and to deliver any and all legal instruments in writing which may be required to execute all powers herein conveyed free and clear of said trust; and said Trustees may delegate from time to time, any or all of the powers herein conveyed to any one of their number to act in their place and stead, but that there must be a meeting of said Trustees at least twice a year and oftener if deemed necessary, to revoke or instruct as to future actions of said Trustee to whom power has been or may be delegated, or to make future delegations, but with this sole limitation; it shall require joint action and agreement between all my trustees to make any disbursements, advancements or divisions between my sons or any dead son's family.
"3rd: THE GRANTORS further expressly authorize and empower said Trustees to keep the buildings upon any real estate conveyed to them in repair and insured against loss by fire.
"THE GRANTORS specifically instruct the Trustees herein named and empower them to do any of the following acts when they have each agreed thereto, or to do anything else that they may mutually agree upon:
"a. To make advancements to any of my sons or dead son's family.
"b. To make divisions and disbursements of or from said trust property equally between my four sons, the estate of any dead son taking that son's share; always taking into account any previous advancement to any son or dead son's family.
"c. The Trustees herein named shall serve until the number of said Trustees shall have been by death reduced to two, and it shall then be the duty of the remaining Trustees to terminate this Trust promptly, and the remainder shall be divided equally among my four sons, the estate of any dead son taking that son's share, but taking into account any previous advancements to any son or dead son's family.
"d. To render an annual financial statement of the Trust to each Son or dead Son's family.
"e. The Trustees named herein may by proper means appoint any one of their number to vote any stock held by the Trustee at any corporate meeting, and said voting shall be binding on said Trust.
"f. The Trustees are authorized and empowered, in their sole discretion, to sell, at public or private sale, any and all property, real or personal, at any time constituting the trust fund, and to assign, transfer, convey and deliver the same to the purchaser or purchasers thereof, without liability on the part of such purchaser or purchasers as to the application, non-application or misapplication of the purchase money or any part thereof. *Page 36 
"My sons, Charles Camden Blades, James Evans Blades, Melick West Blades and Lemuel Showell Blades, Jr., take no title except the title of Trustee in any of the properties above described or hereafter to be conveyed to said Trust all subject however, to their taking title by mutual agreement as set forth above. It is understood that upon the death of any of the aforesaid Trustees, that title resided in said Trustee to the above described property or any additions thereto, shall vest in the survivor or survivors.
"The Trustees named herein shall not be required to file with the Court, or otherwise, any inventory of any property received or disbursed by said Trustees, and shall not be required to file with the Court any annual or final account, or any account whatever, respecting their Trusteeship.
"The Trustees named herein shall not, nor shall their estates or their personal representatives, be held liable for any loss occurring because of errors of judgment or discretion in the handling of said Trustees estate, or in the deposit or investment of any funds arising therefrom.
"IN WITNESS WHEREOF, L. S. Blades and wife, Grace M. Blades, parties of the first part, and Charles Camden Blades, James Evans Blades, Melick West Blades, and Lemuel Showell Blades, Jr., as Trustees have hereunto set their hands and seals, the day and year first above written.
 L. S. BLADES (SEAL) GRACE M. BLADES (SEAL) CHARLES CAMDEN BLADES (SEAL) JAMES EVANS BLADES (SEAL) MELICK WEST BLADES (SEAL) LEMUEL SHOWELL BLADES, JR. (SEAL)
"(Duly acknowledged and recorded.)"
The deed referred to in paragraph 2 of the stipulations as "Exhibit B" effected an addition to the trust by the conveyance of other lands, and contains specific reference to the provisions of the original instrument permitting such addition, and purports to subject the lands so conveyed to all the provisions of the original trust.
The deed marked "Exhibit C" and executed by the plaintiffs in pursuance of the contract of purchase and sale was executed by them, as trustees, and under the power of sale contained in the original trust instrument, without joinder of their several wives.
The case came on for hearing before Judge Thompson at Chambers, 10 November, 1943, and after due consideration, a judgment was entered upholding the validity of the trust and declaring that the deed executed and acknowledged and tendered to the defendant by the grantors in *Page 37 
pursuance of the purchase contract was sufficient to convey the title to the lands in fee, without encumbrance. From this the defendant appealed.
The appeal raises no question whether the land described in the subsequently executed deed, marked "Exhibit B," comes under the provisions of the purported trust under the deed designated "Exhibit A." The question for our decision is whether the latter instrument creates a valid trust, empowering the grantees of the legal estate, as trustees, to convey the lands concerned with this controversy in fee. We are of the opinion that it does, and so hold.
The appellant presents the view that the persons to whom the legal title has been committed in trust are the identical persons made beneficiaries and, therefore, as a matter of law the equitable interest is merged in the legal estate, with the result that the grantees in the trust instrument have, at most, a fee simple title to the lands. Defendant says that it is therefore justified in refusing to accept the deed tendered to it by plaintiffs, executed by them as trustees, without the joinder of their several wives to convey, or bar, dower.
Under conditions which greatly restrict the application of the doctrine, it may be broadly stated that the law will not uphold an attempted trust which makes no severance between the legal estate and the beneficial enjoyment and the equitable interests. 26 R. C. L., Trusts, S. 22. As it is more directly expressed, where the holder of the legal title and the cestuique trust are one and the same person, the result is a merger of the legal and equitable title, defeating the trust and ordinarily conferring a fee simple title upon the person holding the legal title and beneficial interest. It is essential, however, that the equitable interest of no other person shall intervene. It is also stated as a condition of merger that the legal and equitable estates must be coextensive and commensurate; Lewin on Trusts (1939 Ed.), p. 12; or, as otherwise stated, the legal estate must be at least as extensive as the equitable. Odom v. Morgan, 177 N.C. 367,369, 99 S.E. 195. Critical examination of the terms coextensive and commensurate, as will appear in our further discussion, will show that there must be implied a reference not only to the quantum of the estates, but the quality and nature of their tenure.
We find difficulties in the way of applying the doctrine in the instant case. Amongst them is the impossibility of judicially allocating and applying the individual equitable interest to the appropriate legal interest with which it is supposed to merge, where the trustees and the beneficiaries are plural and where the property is committed to the trustees *Page 38 
collectively, as a body, to act in common for cestuis whose equitable interests are individual. And the merger, if it takes place at all, must come through the spontaneous action of the law without carpentry by the court.
In describing the nature of a trust, Lewin on Trusts (1939 Ed.), pp. 11-12, adopts Lord Coke's definition of a use — the term by which a trust in lands was formerly known: "A confidence reposed in some other, which is not issuing out of the land, but as a thing collateral, annexed in privity to the estate of the land, and to the person touching the land . . . for which cestui que trust has no remedy but by subpoena in Chancery." Commenting on the significance of the words "reposed in some other," it is said that because a man cannot issue a subpoena upon himself, he cannot hold in trust for himself; and, therefore, "if the legal and equitable interests happen to meet in the same person, the equitable is forever absorbed in the legal." Ibid., p. 12.
Judge Henderson, in Butler v. Godley, 12 N.C. 94, said of this situation: "To me it is incomprehensible how a person can take to the use of or in the trust for himself; that he should be his own trustee; that he should have a right to call upon himself to perform the use or trust, and, if refused, enforce performance."
This is quoted with approval by Judge Hoke in Odom v. Morgan, supra, with supporting citations.
Although law and equity are now administered in the same courts in our jurisdiction, and most others, the doctrine of merger is still based on this same condition — that a person as cestui trust cannot appeal to the court against himself as trustee where only his own rights are involved. In other words, it would be inconceivable that he should have the law upon himself to restrain himself from a civil injury committed in his capacity as trustee to which he consents as cestui.
Where the same person is both sole trustee and sole beneficiary, and the trust is passive, the force of the historical reason, still considered fundamental, can be readily seen. In its brief the defendant recognizes "that most of the cases deal with instances wherein a sole trustee is also the sole beneficiary" and recognizes that a different rule has been applied where the sole trustee is only one of several beneficiaries; but calls attention to the fact that in the instant case all the trustees are also all the beneficiaries. It is contended that this identity in personnel constitutes a complete analogy, rendering the case at bar indistinguishable from instances where a single trustee is also sole beneficiary.
This rule has not been generally accepted. While we do not mean to say that the doctrine of merger is confined strictly to cases where one person is the sole trustee as well as the sole beneficiary, and to passive trusts, we should think that where plurality exists as to the trustees and *Page 39 
as to the beneficiaries in an active trust, instances in which merger might occur must indeed be infrequent, and our attention has not been called to any cases which would sustain that view as applied to the case at bar.
It is true that in this case the group named as trustees and the group named as cestuis are identical in personnel, but they are not so in comparable relationships. It cannot be said that any one of the beneficiaries has either sole or controlling determination with respect to his own equitable interest or that of any other in the exercise of any of the powers conferred by the trust instrument, or in the making of any decision in the administration of the trust. No cestui que trust as trustee has a free hand in dealing with his own equitable interest nor with that of any other. It is expressly required that action be unanimous; and the trust deed provides for complete authority to surviving trustees in case the panel is reduced in number by death. A distinct, but not unusual, type of "confidence" has been reposed — in the composite mind, will and conscience of the group to whom the trust has been committed.
There is no reason why the law should reject such a trust either upon the theory of incompatibility or that of merger; and such trusts have been sustained by the impressively greater weight of authority. Speaking directly to this situation, it is said in 1 Bogert, Trusts, sec. 129, p. 387:
"The argument that a duality of interest in one or more trustees should prevent the attempted creation of an express trust from being successful is extremely weak. In one of the worst possible cases, where there is absolute identity of personnel between trustees and cestuis, the obtaining of unbiased administration may be difficult and the court may consequently think it proper to appoint new trustees. But the trustees are capable oftaking, holding, and administering. The equitable gift is perfect. Defects in arrangements for execution of the trust should not be vital to the creation. If the trustee with a dual interest (an interest as trustee and also as beneficiary) is only one of several trustees, the trustees not interested as cestuis" — i.e., as to the particular individual equitable interest — "will serve as a check on the interested trustee and secure proper administration."
Pertinent, also, is the paragraph under the same section on p. 383. See, to the same effect, Scott on Trusts, secs. 99-100, pp. 519-538. No such difficulty of unbiased administration is encountered in the case at bar, since the trustees are required to act unanimously.
And in Restatement of the Law, Trusts, pp. 269-270, sec. 99 (4), dealing with beneficiaries as trustees, it is said: "If there are several beneficiaries of a trust, the beneficiaries may be the trustees." After *Page 40 
explaining the merger which takes place when the sole trustee is also sole beneficiary, it is said:
"b. On the other hand, there can be a trust where there are several beneficiaries who are also the trustees. In such a case each of the beneficiaries has an equitable interest which is separate from the legal interest held by the whole group. As trustees they hold the legal title asjoint tenants, and ordinarily they hold the beneficial interests as tenantsin common.
Also, in sec. 115 (4), we find the converse statement: "If there are several trustees of a trust, the trustees may be the beneficiaries of the trust."
Reaching the same conclusion by most convincing reasoning are many recent cases, some of which we cite, and from which we would like to quote if time and space did not forbid. Directly in point are: Morgan v. Murton
(1942), 31 N.J. Eq., 48, 26 A.2d 45; Horlick v. Sidley (Wis., 1942),3 N.W.2d 710; Sturgis v. Citizens Bank (Md.), 137 A. 378. There are cases contra, some of which are discussed in Morgan v. Murton, supra, but they represent a minority view which we do not find compelling or persuasive.
Few text writers deal with this subject without noting that the intention of the parties frequently prevents merger.
Where the sole trustee is likewise sole beneficiary, and especially in the case of a passive trust, there are more cogent reasons for merger which override the intention. The trust under consideration is not a passive, dry or merely holding trust, subject to transfer of the use to the legal title under the Statute of Uses, and more easily overthrown by the allied doctrine of merger. On the contrary, it is an active trust, with the usual features, containing power of sale, of investment and reinvestment, and of distribution — inviting a more liberal treatment in order to sustain the intent of the parties. There is no question here but that the settlers did not intend to give the grantees of the legal title, as trustees, any interest in the lands beyond that necessary to administer the trust and exercise the powers created for that purpose. The deed limits them to that narrow dominion in totidem verbis.
It is generally conceded that the attitude of the American courts toward the doctrine of merger is less rigorous than that which obtains in England, and which might in certain cases reflect the English view in Lewin's great work on Trusts, although, even there, the question of intent is often controlling. Here the doctrine is disfavored. Tiffany and Bullard, The Law of Trusts and Trusts, pp. 813, 814, 815; Tiffany, Real Property, 2d Ed., sec. 34, p. 92. "Merger is not favored in equity." Kent's Commentaries, 14th Ed., pp. 102-103. "It is believed that the doctrine of merger is an elastic doctrine in equity, not one to be applied *Page 41 
with rigidity. Equity will not use merger if serious injustice would arise or intent be obviously frustrated." 1 Bogert, Trusts, sec. 129, p. 383. Perry on Trusts, 7th Ed., sec. 347, p. 589; Odom v. Morgan, supra;Furniture Co. v. Potter, 188 N.C. 145, 124 S.E. 122; Morgan v. Murton,supra; Harris v. Harris, 205 Pa., 460, 55 A. 30.
Speaking to this point, in Johnson v. Muller, 149 Kan. 128,86 P.2d 569, loc. cit. 574, where there was an identity between trustees and beneficiaries; the Court said:
"We are of opinion that under the will the interests of the beneficiaries are not common to each other, that each trustee is to look after the interest of all beneficiaries, that each beneficiary is interested in what all of the trustees may do in the management and control of his estate, and there being specific provision for succession of trustees, that it may not be said that any beneficiary is trustee for himself alone. In so far as merger of the legal and equitable estates is concerned, we are of opinion the intention of the testator is too clear to permit it to be defeated or destroyed by application of the doctrine." Scott on Trusts, sec. 995, pp. 533-534.
We understand that it is conceded by appellant that if the trust is valid, the respective wives of the grantees have no dower interest in the land, since in that case none of the cestuis que trustent would hold an equitable estate of inheritance. G.S., 30-5 (C. S., 4100); Barnes v.Raper, 90 N.C. 189, 190; Alexander v. Fleming, 190 N.C. 815,130 S.E. 867; Boyd v. Redd, 118 N.C. 680, 685, 24 S.E. 429.
Our conclusion is that the questioned instruments create a valid trust empowering the grantees to convey the real estate described in the tendered deed in fee, without the joinder of their respective wives; and that the said tendered deed, nothing else appearing except what we see upon this record, is sufficient to convey an unencumbered title in fee to the defendant. Under the stipulated agreement with reference to the judgment, the requirement that defendant accept the deed and pay the purchase price was proper. The judgment is
Affirmed. *Page 42