IN THE MATTER OF THE ESTATE OF JOHN W. POPE, JR., Deceased

JANE FORBES POPE, Petitioner v. THOMAS J. ROLLINS, Executor of the Estate of John W. Pope, Jr., AMANDA JOYCE POPE and JAMES ARTHUR POPE, in their capacities as co-Trustees of the Pope Family Trust for the benefit of John W. Pope, Jr., and THE JOHN WILLIAM POPE FOUNDATION, Respondents

No. COA06-1644

(Filed 2 September 2008)

**1. Trusts— elective share—specific procedure for clerk**

Although petitioner contends the trial court erred in an elective share proceeding by concluding that her claim to an elective share of assets in the Pope Family Trust was an estate proceeding instead of a special proceeding, the label was unimportant in this case given the fact that: (1) the General Assembly chose to set out a specific procedure for the clerk and the standard of review for the superior court judgment in N.C.G.S. § 30-3.4; and (2) petitioner failed to demonstrate that the proceedings before the clerk violated N.C.G.S. § 30-3.4 or that the superior court applied an improper standard of review.

**2. Constitutional Law— due process—opportunity to be heard**

The trial court did not violate petitioner's right to due process by failing to conduct a hearing on her appeal regarding her claim for an elective share of trust assets because: (1) petitioner failed to properly preserve this issue by failing to cite authority as required by N.C. R. App. P. 28(b)(6); (2) petitioner failed to demonstrate that she was denied an opportunity to be heard; and (3) although petitioner was not given an opportunity to present oral argument, there was voluminous briefing before the superior court along with the extensive materials already in the record, thus giving petitioner ample opportunity to be heard.

**3. Trusts— elective share—taxable estate—gross estate—total net assets**

The trial court did not err by granting respondents' motion for summary judgment and by denying petitioner's claim for an elective share of trust assets under N.C.G.S. § 30-3.1 et seq. because the plain language of N.C.G.S. § 30-3.2(4) establishes that the assets in testator's trust were not part of his total net assets, which includes all property to which decedent had legal

and equitable title immediately prior to death, when: (1) testator ceased to have legal title when he created the trust since it was held instead collectively by the trustees; (2) petitioner cites no legal authority for the proposition that "taxable estate" is synonymous with "gross estate," and N.C.G.S. § 30-3.2(4)(e) refers to the taxable estate as decedent's gross estate less any deductions; (3) the taxable estate is zero since the assets of the trust were all transferred to a foundation, a corporation organized for a charitable purpose, and as a result, no value is left in the trust for purposes of calculating testator's total net assets; and (4) decedent did not make a gift to the foundation within six months of his death since no delivery, actual or constructive, of the trust assets occurred until after testator's death.

Appeal by petitioner and respondents from orders entered 1 September 2006 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 20 September 2007.

*Ward and Smith, P.A., by Alexander C. Dale, George K. Freeman, Jr., and Stuart B. Dorsett, for petitioner.*

*Womble, Carlyle, Sandridge & Rice, PLLC, by Johnny M. Loper, Jean T. Adams, Elizabeth Arias, and Sarah L. Buthe, for respondents.*

GEER, Judge.

Petitioner Jane Forbes Pope appeals from the order granting respondents' motion for summary judgment and denying her claim for an elective share under N.C. Gen. Stat. § 30-3.1 *et seq.* (2007) (the "Elective Share Act"). We hold that Ms. Pope has failed to demonstrate that the clerk of superior court and, on appeal, the superior court deviated from the procedural requirements of the Elective Share Act. Further, we have concluded based on the undisputed facts that the trust assets at issue are not included in the "Total Net Assets," as defined by N.C. Gen. Stat. § 30-3.2(4) (2007), of Ms. Pope's husband's estate. Accordingly, we affirm the decision below, although on different grounds.

Facts

On 23 December 1986, John W. Pope, Jr. ("Mr. Pope"), together with his sister and brother, Amanda Joyce Pope and James Arthur Pope, entered into the Pope Family Trust Agreement ("the Trust

Agreement"). Pursuant to the Trust Agreement, the siblings, as grantors, each transferred into the trust specified shares of preferred and common stock of Variety Wholesalers, Inc., a closely-held family business. The Trust Agreement named the siblings as the three trustees of the trust and expressed the purpose of the trust as being to receive, manage, and distribute any property that the siblings conveyed to the trustees during their lifetimes or upon their deaths or any other property distributed to the trustees. The trustees were granted the authority to act only upon the unanimous consent of all of the trustees.

The Trust Agreement required the trustees to divide the property held by the trust into equal shares, with each share to be held in a separate trust for Mr. Pope, Amanda Joyce Pope, and James Arthur Pope. The trustees were required to "pay over" to each of the siblings all of the income from his or her separate trust, or to use that income for that sibling's benefit, in at least annual installments. In addition, the Trust Agreement authorized the trustees "at any time and from time to time to distribute such part or all of the principal of the trust of any such Grantor in such amounts as they may deem best in their discretion to provide for the support and maintenance of such Grantor and to provide for the payment of such income tax liabilities as such Grantor shall incur as a result of such Grantor's beneficial interest in such trust, as such tax liability may be determined by the Trustees in their discretion from time to time." The Trust Agreement further authorized the trustees "in their discretion" to distribute trust principal to enable a grantor to purchase a home; to enter into a trade, profession, or business; or for other similar purposes.

The Trust Agreement stated that the trust "is irrevocable, and that this Trust may not be altered, amended or modified." According to the Trust Agreement, the trust could be terminated only "[a]t such time as: (1) no then-living Grantor is less than fifty (50) years of age; (2) each of John W. Pope, Sr. and Joyce W. Pope [the siblings' parents] are deceased; and (3) the Trustees then serving shall sign their unanimous written consent to the termination of each of the trusts existing hereunder for each of the then living Grantors . . . ." Upon the occurrence of those circumstances, the trustees were required to distribute the property held in each of the siblings' trusts to "the beneficiaries then entitled to the income therefrom."

Upon the death of one of the siblings, the trustees were required to divide the property in the trust for that sibling into as many equal shares as would allow the trustees to set apart one share for each of

the sibling's living children and each deceased child with descendants surviving at the time of the division. The Trust Agreement further provided: "Should any Grantor die without lineal descendants, then the property in the trust of such Grantor shall be distributed by the Trustees to the John W. Pope Foundation; provided that each such Grantor shall have the power to direct and appoint the property in the trust of such Grantor to the shares set apart for the other Grantors . . . or their descendants . . . to be held and distributed in all respects as if such property had originally been a part of such shares so set apart." The Trust Agreement specified the manner by which the grantor could exercise this power. The Trust Agreement then provided that "[s]hould any Grantor die without lineal descendants and without effectively exercising this power, then the property in the trust of such Grantor shall be distributed to the John W. Pope Foundation."

Mr. Pope married Jane Forbes Pope ("Ms. Pope") on 19 October 2000. Mr. Pope executed a will on 17 January 2002, naming Ms. Pope as his sole beneficiary. On 19 March 2004, Mr. Pope died testate survived by his wife and siblings. Mr. Pope had no children and had not exercised his power to have his trust's assets distributed to his siblings' trusts. On 5 May 2004, the surviving trustees of the Pope Family Trust transferred the principal of Mr. Pope's trust to the John W. Pope Foundation ("the Foundation"), relying upon the terms of the Trust Agreement. The Foundation is a tax-exempt charitable organization.

A week later, Ms. Pope filed a petition for elective share pursuant to N.C. Gen. Stat. § 30-3.1 (2007). On the same date, she also filed a motion for a standstill order pursuant to N.C. Gen. Stat. § 30-3.5(b) (2007), alleging that she is entitled as her elective share to a portion of the assets of Mr. Pope's trust and that James Arthur Pope and Amanda Joyce Pope, as trustees, had acted improperly in transferring the trust's assets to the Foundation. Ms. Pope sought an order: (1) staying any disposal of the property in the Pope Family Trust pending final determination of Ms. Pope's elective share; (2) staying any further action by the trustees of the Pope Family Trust until a trustee had been appointed as the third trustee of the Pope Family Trust in place of Mr. Pope; and (3) compelling the Foundation to reconvey any property transferred from the Pope Family Trust after Mr. Pope's death back into the name in which the assets were held prior to the transfer.

On 12 May 2004, an assistant clerk of superior court granted Ms. Pope's motion and entered a standstill order. In an order entered 19

IN RE ESTATE OF POPE

[192 N.C. App. 321 (2008)]

July 2004, the clerk of superior court granted the Pope Family Trust's and the Foundation's motion for reconsideration and entered a revised standstill order, requiring only that the Foundation retain one-half of the assets received from Mr. Pope's trust or one-half of the proceeds of any sale of the Variety Wholesalers, Inc. stock transferred as part of those assets.

Upon the filing of Ms. Pope's elective share petition, the clerk designated the elective share claim as an estate matter. On 17 May 2005, Ms. Pope filed a petition to have her elective share claim re-designated as a special proceeding, representing that respondents (Amanda Joyce Pope and James Arthur Pope, as co-trustees of the Pope Family Trust, and the Foundation) had no objection to the petition. On 20 May 2005, the clerk entered an order granting the petition and ordering that the petition for elective share together with all subsequent pleadings be transferred to the special proceedings division of the Wake County Superior Court. In a letter to the clerk dated 20 May 2005, however, counsel for respondents indicated that he had done additional research and now believed that the matter was properly an estate proceeding.

On 6 September 2005, respondents filed a motion to dismiss the petition for elective share or, alternatively, for summary judgment, attaching various affidavits and other materials. On 12 September 2005, Ms. Pope also filed a motion for summary judgment. Although Ms. Pope did not attach any additional materials, she made "[r]eference . . . to the pleadings, all of the discovery conducted in this matter, and to the Court's file."

On 24 March 2006, the clerk entered an order rescinding her 19 May 2005 order re-designating the case as a special proceeding, directing the special proceeding file closed, and directing that all filings in the special proceeding be transferred back to the estate file. On the same date, the clerk also entered an order on the parties' motions for summary judgment. The clerk determined that (1) the assets of Mr. Pope's trust were not part of his "Total Net Assets" as defined by N.C. Gen. Stat. § 30-3.2(4); (2) to the extent those assets should be included in Total Net Assets, the assets should be valued as of the date they were transferred to the trust; and (3) neither the Foundation nor the Pope Family Trust was subject to contribution to satisfy Ms. Pope's elective share. The clerk concluded that on those issues "there is no material fact at issue and . . . Respondents are entitled to judgment as a matter of law." She nonetheless included findings of fact because "it can be helpful for a lower court to set out the

undisputed facts and legal principles upon which the judgment is based where an appeal is anticipated."

Ms. Pope appealed to superior court on 27 March 2006. In a Joint Scheduling Order filed 11 May 2006, the court stated that "the parties believe, and the Court agrees, that the matters at issue there [sic] are primarily, if not entirely, issues of law, and the parties do not desire to offer any additional facts into evidence, to the extent such might be permitted." The court indicated that "[a]ccordingly, this Court will conduct its review on appeal upon the evidence of record before the clerk in 04 E 777 without receiving any additional evidence." On 9 June 2005, Ms. Pope filed a motion to amend the scheduling order, noting that the clerk had refused to receive affidavits from attorneys regarding the meaning of "taxable estate," as used in N.C. Gen. Stat. § 30-3.2(4)(e), and requesting that she be allowed to present to the court additional evidence in the form of those affidavits.

On 1 September 2006, the superior court entered its memorandum of decision and order on Ms. Pope's appeal from the clerk's order rescinding its 19 May 2005 order re-designating the elective share matter as a special proceeding. In affirming the clerk's order, the superior court concluded that the clerk had properly determined that an elective share proceeding is an estate matter within the original jurisdiction of the clerk of superior court and that appeals from orders in an elective share proceeding are governed by N.C. Gen. Stat. § 1-303.3 (2007) and N.C. Gen. Stat. § 30-3.4(g) (2007).

Also on 1 September 2006, the superior court entered a memorandum of decision and order on the appeal from the clerk's order on the parties' motions for summary judgment. As a preliminary matter, the superior court noted that following the entry of the Joint Scheduling Order, Ms. Pope's counsel "filed affidavits of lawyers familiar with the drafting of the Elective Share Act, G.S. 30-1 et seq. in support of their position that the Clerk's Order was legally erroneous in terms of what the Elective Share Act provides." The court explained that it had scheduled a hearing on 14 July 2006 to hear respondents' motion to strike the affidavits and had ordered that the affidavits be sealed until such time that the court (1) determined whether or not it would accept additional evidence and (2) instructed respondents that they could file counter-affidavits.

In addressing the merits of the appeal, the superior court first concluded that the Trust Agreement "is a valid, enforceable binding contract that vests specific rights in each beneficiary in consideration

for their giving up valuable rights of ownership in their individual shares of Variety Wholesalers." The superior court then addressed the following question: "Is the Elective Share Act retroactive as applied to vested contractual rights such as those in the Pope Family Trust Agreement?" The court answered this question by concluding that the legislature "could not have intended to allow the Elective Share Act to have retroactively affected other vested contractual rights made prior to the effective date of the Act such as those vested rights in the parties to the Pope Family Trust Agreement." The court observed that its "interpretation is in accord with North Carolina law and the strong presumption that statutes are presumed to act prospectively, especially here where to apply the Act retroactively would involve an unconstitutional impairment of vested contract rights between the parties to the Pope Family Trust Agreement."

The court, therefore, concluded "that the Elective Share Act is to be applied only prospectively and may not reach back in time to retroactively undo and vacate vested contractual rights regarding property and assets, including the rights vested in the parties to the Pope Family Trust Agreement." Because of its disposition of the appeal, the court made "no ruling, or determination, as to the validity or invalidity of the findings and conclusions of law made by the Clerk[,]" including the objections and motions to strike the affidavits relating to the interpretation of the Elective Share Act. Ms. Pope gave timely notice of appeal to this Court on 20 September 2006.

## Discussion

This appeal represents the first time this Court has addressed the State's Elective Share Act, which became effective 1 January 2001 and applies to estates of decedents dying on or after that date. 2000 N.C. Sess. Laws ch. 178 sec. 9. An elective share is "equal to (i) the applicable share of the Total Net Assets, as defined in G.S. 30-3.2(4), less (ii) the value of Property Passing to Surviving Spouse, as defined in G.S. 30-3.3(a)." N.C. Gen. Stat. § 30-3.1(a).

The surviving spouse must exercise the right to obtain an elective share by filing a petition within six months after the issuance of letters testamentary or letters of administration. N.C. Gen. Stat. § 30-3.4(a) and (b). The clerk must set the matter for hearing no earlier than two months and not later than six months after the filing of the petition. N.C. Gen. Stat. § 30-3.4(c). Following the hearing, the clerk "shall determine whether or not the surviving spouse is entitled to an elective share, and if so, the clerk shall then determine the elec-

tive share and shall order the personal representative to transfer that amount to the surviving spouse." N.C. Gen. Stat. § 30-3.4(f). Ms. Pope raises questions regarding (1) the proper procedure to be followed in deciding elective share claims and (2) whether the assets of Mr. Pope's trust should be included in his Total Net Assets when determining her elective share.

I

[1] Ms. Pope contends that the trial court erred in concluding that her claim was an estate proceeding instead of a special proceeding. Ms. Pope argues that the designation is important because "[t]his designation determines the clerk's duties and the superior court's standard of review on appeal." We need not decide, in this case, what label should be applied because the General Assembly chose to set out a specific procedure for the clerk and the standard of review for the superior court judge in N.C. Gen. Stat. § 30-3.4. Ms. Pope's contentions on appeal are all resolved by the terms of that statutory provision.

N.C. Gen. Stat. § 30-3.4(f) specifies that "[t]he clerk's order shall recite specific findings of fact and conclusions of law in arriving at the decedent's Total Net Assets, Property Passing to Surviving Spouse, and the elective share." N.C. Gen. Stat. § 30-3.4(g) provides that "[a]ny party in interest may appeal from the decision of the clerk to the superior court." Upon an appeal taken from the clerk to the superior court, "the judge may review the findings of fact by the clerk and may find the facts or take other evidence, but the facts found by the judge shall be final and conclusive upon any appeal to the Appellate Division." *Id.*

Ms. Pope does not argue that the clerk failed to comply with the procedures set out in N.C. Gen. Stat. § 30-3.4(f). Instead, Ms. Pope focuses on whether an elective share proceeding is an estate proceeding or a special proceeding. According to Ms. Pope, if it is an estate proceeding, as Ms. Pope contends, then the Rules of Civil Procedure did not apply to the proceeding, and the clerk erred in resolving the dispute pursuant to a motion for summary judgment.

Nothing in N.C. Gen. Stat. § 30-3.4 precludes resolution of the elective share issues on summary judgment if there is no dispute as to the facts. The statute requires only "notice and hearing" without further elaboration. N.C. Gen. Stat. § 30-3.4(f). Summary judgment simply means that a case can be decided based on undisputed

facts without the need for an *evidentiary.* hearing. *See* N.C.R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."). The Elective Share Act anticipates resolution of the elective share issue relatively quickly, *see* N.C. Gen. Stat. § 30-3.4(b) and (c), and, if there are no disputed facts, we can see no justification for requiring an evidentiary hearing when one is not specifically mandated by the statute.

Ms. Pope argues, however, that because the elective share statute requires findings of fact, summary judgment cannot be appropriate as summary judgment orders are not supposed to include findings of fact. While it is true that a trial court may not, on summary judgment, make findings of fact resolving disputed issues of fact, when—as here—the material facts are undisputed, an order may include a recitation of those undisputed facts. *See McArdle Corp. v. Patterson*, 115 N.C. App. 528, 531, 445 S.E.2d 604, 606 (1994) (holding that although the label "findings of fact" implies facts were disputed, findings made by trial judge were *undisputed* and trial court, therefore, committed no error by setting out undisputed facts in judgment), *aff'd per curiam*, 340 N.C. 356, 457 S.E.2d 596 (1995); *Capps v. City of Raleigh*, 35 N.C. App. 290, 292, 241 S.E.2d 527, 529 (1978) ("Granted, in rare situations it can be helpful for the trial court to set out the undisputed facts which form the basis for his judgment. When that appears helpful or necessary, the court should let the judgment show that the facts set out therein are the undisputed facts.").

On appeal, Ms. Pope does not specifically identify any of the clerk's findings of fact as resolving issues of material fact. Indeed, although Ms. Pope asserts that there are factual issues for the trier of fact, she never explains in what way the evidence in the record gives rise to issues of material fact, as opposed to issues requiring the application of law to the facts. Moreover, if summary judgment were inappropriate, the remedy would be to remand for an evidentiary hearing. Yet, Ms. Pope does not specifically argue that she needed an evidentiary hearing. She identifies no issue that required an evidentiary hearing and points to no evidence that she would have presented at such a hearing that was not already before the clerk. On appeal to superior court, the only additional evidence that Ms. Pope sought to present were affidavits—not live testimony—from lawyers regarding the proper interpretation of wording in the statute.

IN RE ESTATE OF POPE

[192 N.C. App. 321 (2008)]

In this case, the parties filed cross-motions for summary judgment, submitting documentary evidence, including affidavits. The clerk conducted a hearing as required by the statute—although it consisted only of oral argument—and then entered an order setting out findings of fact and conclusions of law, also as required by the statute. Ms. Pope has, therefore, failed to establish that the clerk did not comply with the procedural requirements of N.C. Gen. Stat. § 30-3.4.

In any event, the question whether the clerk erred in resolving the case on the parties' cross-motions for summary judgment is not properly before this Court. The record does not contain any indication that Ms. Pope ever objected to the clerk's resolving the case on summary judgment prior to appealing. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1).

Moreover, Ms. Pope also moved for summary judgment. "Our Courts have long held to the principle that a party may not appeal from a judgment entered on its own motion or provisions in a judgment inserted at its own request." *Templeton v. Apex Homes, Inc.*, 164 N.C. App. 373, 377, 595 S.E.2d 769, 771-72 (2004) (internal citation omitted) (plaintiffs were precluded from appealing entry of summary judgment because they invited error when "the parties joined together to encourage the court to enter summary judgment on all issues in order to proceed immediately to the question of remedy"). Any error the clerk may have committed by resolving the matter on summary judgment was thus invited error.

Turning to the appeal before the superior court, Ms. Pope contends the court did not apply the proper standard of review. Specifically, she argues the superior court (1) erred in finding facts not contained in the clerk's order and finding facts contrary to the clerk's order, (2) erred in not applying a de novo standard of review, and (3) erred in ruling on the constitutional application of the statute when the clerk had declined to do so.

We first note that Ms. Pope's contention that the superior court erred in not applying a de novo standard of review is inconsistent with her other two contentions that the trial court erred in finding additional facts and in addressing an issue not first determined by the

clerk. " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court].' " *N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 370, 649 S.E.2d 14, 24 (2007) (quoting *Peninsula Prop. Owners Ass'n v. Crescent Res., LLC*, 171 N.C. App. 89, 92, 614 S.E.2d 351, 353, *appeal dismissed and disc. review denied*, 360 N.C. 177, 626 S.E.2d 648 (2005)).

Regardless, the standard of review for the superior court is set out in N.C. Gen. Stat. § 30-3.4(g): "Upon an appeal taken from the clerk to the superior court, the judge may review the findings of fact by the clerk *and may find the facts or take other evidence*, but the facts found by the judge shall be final and conclusive upon any appeal to the Appellate Division." (Emphasis added.) Thus, the superior court was entitled, after reviewing the clerk's findings of fact, to "find the facts." *Id.*

In this case, however, both the clerk and the superior court concluded that the material facts were undisputed, and the only issues were ones of law. On appeal, the issues that Ms. Pope claims are disputed are either questions of law or involve application of legal principles to undisputed facts. Thus, because the trial court was addressing only issues of law, it necessarily conducted a de novo review. *See Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) ("On appeal, an order allowing summary judgment is reviewed *de novo*."). Under a de novo review, the superior court was entitled to base its decision on different grounds than that relied upon by the clerk. *See Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989) ("If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered."). Thus, the superior court did not err in affirming the clerk's decision based on its construction of the effective date of the statute rather than on the statutory analysis applied by the clerk.

In sum, Ms. Pope has failed to demonstrate that the proceedings before the clerk violated N.C. Gen. Stat. § 30-3.4 or that the superior court applied an improper standard of review. While the case may arise in which this Court is required to resolve whether an elective share proceeding is an estate proceeding or a special proceeding, we are not required to do so in this case.

## II

**[2]** Ms. Pope next contends that her right to due process was denied because the trial court did not conduct a hearing on her appeal. She cites no authority in support of this position and, therefore, this issue is not properly presented for review. *See* N.C.R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

Further, Ms. Pope has failed to demonstrate that she was denied an opportunity to be heard. The superior court noted in its memorandum of decision and order:

> Petitioner and Respondents delivered to the Court briefs and memoranda with supporting legal materials weighing in excess of fifty (50) pounds and when stacked was approximately two (2) feet tall.

> Petitioner Pope's Brief on the Elective Share Issue is fifty (50) pages. Respondents' Brief on the Elective Share Issue is fifty two [sic] (52) pages and Petitioner Pope's Reply Brief is thirty five [sic] (35) pages.

Ms. Pope did not request an evidentiary hearing. Indeed, the only additional material that she proposed to submit to the superior court were affidavits that the superior court deemed immaterial to its resolution of the appeal.

It appears that Ms. Pope is concerned that she was not given an opportunity to present oral argument. In light of the voluminous briefing before the superior court along with the extensive materials already in the record, we can conceive of no basis upon which one could conclude that Ms. Pope was denied due process. She had ample opportunity to be heard. *Cf.* N.C.R. App. P. 28(j) (limiting main briefs filed in the Court of Appeals to 35 pages and reply briefs to 15 pages if using nonproportional type); N.C.R. App. P. 30(f) (authorizing appellate courts to decide appeal on the record and briefs without oral argument).

## III

**[3]** We now turn to the question of Ms. Pope's entitlement to an elective share. "[D]etermining the value or amount of the elective share requires one to determine the value or amount of three figures, to wit: (1) the 'applicable share' of (2) the 'Total Net Assets' and (3) the

'Property Passing to Surviving Spouse.' " 1 James B. McLaughlin, Jr. & Richard T. Bowser, *Wiggins Wills and Administration of Estates in North Carolina* § 161.1 (4th ed. 2000). The only issue presented by this appeal is whether the assets in Mr. Pope's trust should be included within the "Total Net Assets." The parties agree that if those assets are not included in the Total Net Assets, then Ms. Pope is not entitled to an elective share.

The clerk ruled that the assets should not be included based on the definition of Total Net Assets contained in the statute. The superior court concluded that the assets should not be included because the General Assembly did not intend for the statute to apply retroactively to contractual rights that vested prior to the effective date of the statute. Respondents in turn argue as an alternative ground for upholding the decision below that application of the statute to Mr. Pope's trust would violate the Contracts Clause of the United States Constitution and the equivalent provision under the North Carolina Constitution.

It is well settled that "appellate courts must 'avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds.' " *James v. Bartlett*, 359 N.C. 260, 266, 607 S.E.2d 638, 642 (2005) (quoting *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002)). *See also Brooks v. Taylor Tobacco Enters., Inc.*, 298 N.C. 759, 761, 260 S.E.2d 419, 421 (1979) ("It is an established principle of appellate review that this court will refrain from deciding constitutional questions when there is an alternative ground available upon which the case may properly be decided."). While the superior court construed the statute as applying prospectively only, in order to avoid the statute's having an unconstitutional effect, we are concerned that this interpretation may prevent the statute from reaching assets that the General Assembly intended to reach and that could be included within Total Net Assets without constitutional implications. Since we have determined that the plain language of the statute establishes that the assets in Mr. Pope's trust were not part of his Total Net Assets, we need not address either the constitutional issue or the superior court's conclusion regarding the effective date of the statute.

For purposes of determining the elective share,

"Total Net Assets" means, after the payment or provision for payment of the decedent's funeral expenses, year's allowances to persons other than to the surviving spouse, debts, claims other

than an equitable distribution of property awarded to the surviving spouse pursuant to G.S. 50-20 subsequent to the death of the decedent, and administration expenses, the sum of the following [relevant items]:

a. All property to which the decedent had legal and equitable title immediately prior to death;

b. All property received by the decedent's personal representative by reason of the decedent's death, other than wrongful death proceeds;

c. One-half of the value of any property held by the decedent and the surviving spouse as tenants by the entirety, or as joint tenants with rights of survivorship;

d. The entire value of any interest in property held by the decedent and another person, other than the surviving spouse, as joint tenants with right of survivorship, except to the extent that contribution can be proven by clear and convincing evidence;

e. The value of any property which would be included in the taxable estate of the decedent pursuant to sections 2033, 2035, 2036, 2037, 2038, 2039, or 2040 of the [Internal Revenue] Code.

f. Any gifts of property made by the decedent to donees other than the surviving spouse within six months of the decedent's death, excluding:

1. Any gifts within the annual exclusion provisions of section 2503 of the Code;

2. Any gifts to which the surviving spouse consented. A signing of a deed, or income or gift tax return reporting such gift shall be considered consent; and

3. Any gifts made prior to marriage;

g. Any proceeds of any individual retirement account, pension or profit-sharing plan, or any private or governmental retirement plan or annuity of which the decedent controlled the designation of beneficiary, excluding any benefits under the federal social security system;

h. Any other Property Passing to Surviving Spouse under G.S. 30-3.3; and

i. In case of overlapping application of the same property under more than one provision, the property shall be included only once under the provision yielding the greatest value.

N.C. Gen. Stat. § 30-3.2(4). Ms. Pope contends that the assets in Mr. Pope's trust fall within subsections (a), (e), and (f).

A. *Legal and Equitable Title*

Total Net Assets include "[a]ll property to which the decedent had legal and equitable title immediately prior to death." N.C. Gen. Stat. § 30-3.2(4)(a). Respondents contend that Mr. Pope had neither legal nor equitable title. We agree that Mr. Pope did not have legal title within the meaning of the statute and, therefore, need not decide whether Mr. Pope had equitable title.

In arguing that this subsection applies, Ms. Pope points to the fact that Mr. Pope was both the beneficiary of the trust and one of the trustees. There is no dispute that legal title to the trust assets was lodged in the trustees. *See In re Appeal of Appalachian Student Hous. Corp.*, 165 N.C. App. 379, 387, 598 S.E.2d 701, 706 ("In an active trust, legal title vests in the trustee of the property."), *appeal dismissed*, 359 N.C. 68, 604 S.E.2d 307 (2004). Since, however, there were multiple trustees, including Mr. Pope, the question remains whether Mr. Pope could still be said to hold legal title.

Our Supreme Court answered this question in *Blades v. Norfolk S. Ry. Co.*, 224 N.C. 32, 29 S.E.2d 148 (1944). In *Blades*, as in this case, the trustees of the trust were identical to the beneficiaries, causing the appellant to argue that both the equitable interest and the legal estate were held by the same individuals. *Id.* at 37, 29 S.E.2d at 151. In holding otherwise, the Court pointed out that none of the trustees had "a free hand in dealing with his own equitable interest nor with that of any other. It is expressly required that action be unanimous; and the trust deed provides for complete authority to surviving trustees in case the panel is reduced in number by death." *Id.* at 39, 29 S.E.2d at 152. In concluding that under these circumstances, legal title and the equitable interest did not merge in a single person, the Court pointed to "the impossibility of judicially allocating and applying the individual equitable interest to the appropriate legal interest with which it is supposed to merge, where the trustees and the beneficiaries are plural and where the property is committed to the trustees collectively, as a body, to act in common for *cestuis* whose equitable interests are individual." *Id.* at 37-38, 29 S.E.2d at 152.

As support for its conclusion, the Court relied upon the first Restatement of Trusts, quoting its assertion that when multiple trustees exist, " 'each of the beneficiaries has an equitable interest which is separate from the legal interest held by the whole group. As trustees they hold the legal title as *joint tenants*, and ordinarily they hold the beneficial interests as *tenants in common.*' " *Id.* at 40, 29 S.E.2d at 153 (quoting Restatement of Trusts § 99). Restatement (Second) of Trusts states that when the sole beneficiary of a trust is also one of several trustees, "[t]he trustees hold the legal title to the property as joint tenants, and the beneficiary has the entire equitable interest. There is no partial merger of the legal and equitable interests." Restatement (Second) of Trusts § 99 cmt. c (1959). *See also Hanson v. Birmingham*, 92 F. Supp. 33, 42 (N.D. Iowa 1950) ("It is well recognized law that where there is more than one trustee they form but one collective trustee."), *appeal dismissed per curiam*, 190 F.2d 206 (8th Cir. 1951); *Nichols v. Pospiech*, 289 Mich. 324, 334, 286 N.W. 633, 636 (1939) (holding that when administration of trust is vested in co-trustees, they all form only one collective trustee).

In this case, when Mr. Pope created the trust, he ceased to have legal title. Legal title to the trust assets was held instead collectively by the trustees. Thus, even if Mr. Pope held equitable title to the assets, an issue we do not decide, he nonetheless no longer held legal title, and N.C. Gen. Stat. § 30-3.2(4)(a) does not apply.

B. *Taxable Estate*

N.C. Gen. Stat. § 30-3.2(4)(e) provides that Total Net Assets include "[t]he value of any property which would be included in the taxable estate of the decedent pursuant to sections 2033, 2035, 2036, 2037, 2038, 2039, or 2040 of the Code." N.C. Gen. Stat. § 30-3.2(1) defines "Code" to mean "the Internal Revenue Code in effect at the time of the decedent's death." Ms. Pope's argument regarding this subsection hinges entirely on her contention that when the General Assembly said "taxable estate," it actually meant "gross estate." We can find no basis for this interpretation of the statute.

Since this subsection encompasses property included in the taxable estate of the decedent "pursuant to" the Internal Revenue Code, the more reasonable interpretation is that the General Assembly was referring to "the taxable estate" as defined by the Internal Revenue Code. Under the Code, "the taxable estate shall be determined by deducting from the value of the gross estate the deductions provided for in this part [26 U.S.C.S. §§ 2051 *et seq.*]." 26 U.S.C.S. § 2051 (2007).

**IN RE ESTATE OF POPE**

[192 N.C. App. 321 (2008)]

Given this definition, we cannot reasonably equate "taxable estate" with "gross estate."

Interpreting the reference to "taxable estate" to mean the federal taxable estate is also consistent with the procedure mandated by the General Assembly for elective share proceedings. N.C. Gen. Stat. § 30-3.4(d) requires that "[i]n every case in which a petition to determine an elective share has been filed, and within two months of the filing of the petition, the personal representative shall prepare and submit to the clerk a proposed Form 706, federal estate tax return, for the estate, regardless of whether that form is required to be filed with the Internal Revenue Service." Form 706, a copy of which is included in the record on appeal in this case, requires the estate to report the "[t]otal gross estate," the "[t]otal allowable deductions," and the "[t]axable estate," calculated by subtracting the deductions from the gross estate.

Moreover, the General Assembly has, in other statutes, specifically distinguished between "gross estate" and "taxable estate," with "taxable estate" consistently being identified as the federal taxable estate. *See* N.C. Gen. Stat. §§ 28A-27-1, 28A-27-5(a), 105-32.2(b) (2007). *Black's Law Dictionary* 589 (8th ed. 2004), when defining "taxable estate," references 26 U.S.C.A. § 2051 and states that it is "[a] decedent's gross estate reduced by allowable deductions (such as administration costs and ESOP deductions)." *See State v. Webb*, 358 N.C. 92, 97, 591 S.E.2d 505, 511 (2004) ("Where appropriate, including earlier in this opinion, this Court has consulted *Black's Law Dictionary*."). When, as here, a term "has longstanding legal significance, it is presumed that legislators intended the same significance to attach by use of that term, absent indications to the contrary . . . ." *Sheffield v. Consol. Foods Corp.*, 302 N.C. 403, 427, 276 S.E.2d 422, 437 (1981).

Ms. Pope cites no legal authority for the proposition that "taxable estate" is synonymous with "gross estate." Although she refers to the Delaware statute that she contends was the basis for our Elective Share Act, that statute, Del. Code Ann. tit. 12 § 902(a) (2007), specifically refers to "decedent's gross estate."[1] She also attempts to rely upon affidavits addressing common estate practice and the intent of the legislature. These affidavits were, however, excluded by the clerk

---

1. "The elective estate means the amount of the decedent's gross estate for federal estate tax purposes, regardless of whether or not a federal estate tax return is filed for the decedent, modified as follows . . . ." Del. Code Ann. tit. 12 § 902(a).

and were not considered by the trial court. Because Ms. Pope has not challenged the clerk's ruling on appeal and has not specifically argued that the trial court erred in not considering those affidavits, those affidavits are not properly before us. We point out, however, that it has long been the law in North Carolina that such evidence is not competent:

> While the cardinal principle of statutory construction is that the words of the statute must be given the meaning which will carry out the intent of the Legislature, that intent must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied. Testimony, even by members of the Legislature which adopted the statute, as to its purpose and the construction intended to be given by the Legislature to its terms, is not competent evidence upon which the court can make its determination as to the meaning of the statutory provision.

*State ex rel N.C. Milk Comm'n v. Nat'l Food Stores, Inc.*, 270 N.C. 323, 332-33, 154 S.E.2d 548, 555 (1967).

To equate "gross estate" and "taxable estate" as urged by Ms. Pope would require us to rewrite the statute. Although Ms. Pope points to a number of problems that may arise from interpreting "taxable estate" to mean the federal taxable estate, those issues are for the General Assembly to resolve. As our Supreme Court has explained: "The duty of a court is to construe a statute as it is written. It is not the duty of a court to determine whether the legislation is wise or unwise, appropriate or inappropriate, or necessary or unnecessary." *Campbell v. First Baptist Church of the City of Durham*, 298 N.C. 476, 482, 259 S.E.2d 558, 563 (1979).

We, therefore, hold that when § 30-3.2(4)(e) refers to "the taxable estate," it means the decedent's gross estate less any deductions. There is no dispute by the parties that the trust assets are part of Mr. Pope's gross estate. Likewise, there is no dispute that the taxable estate, as set out in the Form 706, is zero since the assets of the trust were all transferred to the Foundation, a corporation organized for a charitable purpose. As a result, no value is left in Mr. Pope's trust for purposes of calculating Mr. Pope's Total Net Assets.[2]

---

2. Nothing in this opinion should be viewed as addressing respondents' contention that if N.C. Gen. Stat. § 30-3.2(4)(e) were to apply, it would violate the state and federal constitutions. That question remains open.

**IN RE ESTATE OF POPE**

[192 N.C. App. 321 (2008)]

C. *Gifts*

Finally, respondent relies upon N.C. Gen. Stat. § 30-3.2(4)(f), which provides that Total Net Assets include "[a]ny gifts of property made by the decedent to donees other than the surviving spouse within six months of the decedent's death." The plain language of this subsection requires that the gift be made by the decedent. North Carolina recognizes two types of gifts: *inter vivos* gifts and gifts *causa mortis. Creekmore v. Creekmore,* 126 N.C. App. 252, 256, 485 S.E.2d 68, 71 (1997). Accordingly, we must determine whether the transfer of the trust's assets was an *inter vivos* gift or a gift *causa mortis* by Mr. Pope.[3]

For a valid gift to occur, there must be (1) donative intent and (2) actual or constructive delivery. *Courts v. Annie Penn Mem'l Hosp.,* 111 N.C. App. 134, 138, 431 S.E.2d 864, 866 (1993). " 'In all cases of gifts, whether inter vivos or causa mortis, there must be a delivery to complete the gift. And, in North Carolina, the law of delivery is the same for gifts inter vivos and gifts causa mortis.' " *Huskins v. Huskins,* 134 N.C. App. 101, 104, 517 S.E.2d 146, 148 (1999) (quoting *Atkins v. Parker,* 7 N.C. App. 446, 450, 173 S.E.2d 38, 41 (1970)), *cert. denied,* 351 N.C. 355, 542 S.E.2d 211 (2000). For sufficient delivery to have occurred, the " 'delivery must divest the donor of all right, title, and control over the property given.' " *Id.* (quoting *Courts,* 111 N.C. App. at 138, 431 S.E.2d at 866).

In this case, no delivery, actual or constructive, of the trust assets occurred until after Mr. Pope's death. Accordingly, decedent did not make a gift to the Foundation within six months of his death. *See id.* at 106-07, 517 S.E.2d at 149-50 (holding that decedent's mailing of the combinations to a safe to a third person with a letter stating that the contents of the safe should go to decedent's wife did not constitute adequate delivery prior to the decedent's death); *Creekmore,* 126 N.C. App. at 258, 485 S.E.2d at 72 ("Therefore, because defendant did not cash the check before testatrix's death, the $10,000.00 was never delivered from testatrix to defendant and the attempted gift was incomplete."). We, therefore, conclude that this subsection also does not apply.

3. In oral argument, Ms. Pope's counsel suggested it was a testamentary gift. A testamentary gift is "[a] gift made in a will." *Black's Law Dictionary* 710. Since the transfer of assets was the result of the Trust Agreement and not pursuant to any provision of Mr. Pope's will, it cannot be a testamentary gift. We, therefore, need not decide whether this subsection applies to testamentary gifts.

Conclusion

We thus hold that Ms. Pope has not demonstrated that the clerk or the superior court failed to comply with the procedural requirements of N.C. Gen. Stat. § 30-3.4 and that Ms. Pope received ample opportunity to present her contentions both to the clerk and to the superior court. We further hold, based on the undisputed facts, that Ms. Pope has failed to establish that the assets of Mr. Pope's trust should be included in his Total Net Assets.

We note that the parties have raised a number of significant questions regarding the statute, including its constitutionality when applied to contracts entered into prior to the enactment of the statute, its applicability to assets not part of the marital estate, and the impractical consequences of the plain language of the statute. Because of the precise circumstances of this case, we need not resolve those questions and leave them for another day or for resolution by the General Assembly. Accordingly, we affirm the decision of the trial court.

Affirmed.

Judges BRYANT and STEELMAN concur.